United States Bankruptcy Court
Southern District of Texas

**ENTERED**

April 13, 2023

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

-------------------------------------------------------- x
                                                         :
In re:                                                   :     Chapter 11
                                                         :
NATIONAL CINEMEDIA, LLC,[1]                              :     Case No. 23-90291 (DRJ)
                                                         :
            Debtor.                                      :
                                                         :
-------------------------------------------------------- x
                                                               (Docket No. 3)

### INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES; (III) MODIFYING AUTOMATIC STAY; (IV) SCHEDULING A FINAL HEARING; AND (V) GRANTING RELATED RELIEF

Upon the motion (the "Motion") of the above-referenced debtor, as debtor in possession (the "Debtor") in the above-captioned case (the "Case"), pursuant to sections 105, 361, 362, 363, 503, 506, 507, and 552 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Rules 2002, 4001, 6003, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 2002-1, 4001-1 and 9013-1 of the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas (the "Local Rules"), and the Procedures for Complex Chapter 11 Cases in the Southern District of Texas seeking, among other things:

(a)     authorization for the Debtor, pursuant to sections 105, 361, 362, 363, 503 and 507 of the Bankruptcy Code, to (i) use cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code, and all other Prepetition Collateral (as defined below), solely in accordance with the terms of this interim order (together with all annexes and exhibits hereto, this "Interim Order") and (ii) grant adequate protection to the Prepetition Secured Parties (as defined below) as set forth herein;

(b)     modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Interim Order;

---

[1] The Debtor's address is 6300 South Syracuse Way, Suite 300, Centennial, Colorado 80111.  The last four digits of the Debtor's taxpayer identification number are 2505.

(c)     except to the extent of the Carve Out (as defined herein), and subject to entry of a Final Order (as defined below), the waiver of all rights to surcharge any Prepetition Collateral or Collateral (each as defined herein) under section 506(c);

(d)     subject to entry of a Final Order, for the "equities of the case" exception under Bankruptcy Code section 552(b) to not apply to any of the Prepetition Secured Parties with respect to the proceeds, products, offspring, or profits of any of the Prepetition Collateral or Collateral under section 552(b) of the Bankruptcy Code or any other applicable principle of equity or law;

(e)     that this Court schedule a final hearing (the "Final Hearing") to consider entry of a final order granting the relief requested in the Motion on a final basis (the "Final Order");

(f)     waiver of any applicable stay with respect to the effectiveness and enforceability of this Interim Order (including a waiver pursuant to Bankruptcy Rule 6004(h)); and

(g)     granting related relief;

and a hearing (the "Interim Hearing") having been held by the Court on April 12, 2023 to consider the relief requested in the Motion; pursuant to Bankruptcy Rule 4001 and Local Rule 2002-1, notice of the Motion and the relief sought therein having been given by the Debtor as set forth in the Motion; and the Court having considered the *Declaration of Ronnie Ng in Support of Chapter 11 Petition and First Day Pleadings* (the "Ng Declaration"), the initial Approved Budget (as defined herein) attached hereto as Exhibit 1 (the "Initial Approved Budget"), offers of proof, evidence adduced, and the statements of counsel at the Interim Hearing; and the Court having considered the relief requested in the Motion, and it appearing to the Court that granting the interim relief sought in the Motion on the terms and conditions herein contained is necessary and essential to avoid irreparable harm to the Debtor and its estate and that authorizing the Debtor to use Cash Collateral as contemplated herein will enable the Debtor to preserve the value of the Debtor's business and assets and that such relief is fair and reasonable and that entry of this Interim Order is in the best interest of the Debtor and its estate and creditors; and due deliberation and good cause having been shown to grant the relief sought in the Motion;

**IT IS HEREBY FOUND AND DETERMINED THAT:**[2]

A.      ***Petition Date***.  On April 11, 2023 (the "Petition Date"), the Debtor commenced this Case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of Texas (the "Court").

B.      ***Debtor in Possession***.  The Debtor has continued with the management and operation of its business and properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Case.

C.      ***Jurisdiction and Venue***.  The Court has jurisdiction over the Motion, this Case, and the parties and property affected hereby pursuant to 28 U.S.C. § 1334 and the *Amended Standing Order of Reference from the United States District Court for the Southern District of Texas* dated May 24, 2012.  Venue for this Case is proper pursuant to 28 U.S.C. § 1408.  This Court may enter a final order consistent with Article III of the United States Constitution. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

D.      ***Committee***.  As of the date hereof, no official committee of unsecured creditors has been appointed in this Case pursuant to section 1102 of the Bankruptcy Code (any such committee, the "Committee").

E.      ***Debtor's Stipulations***.  Subject only to the rights of parties in interest specifically set forth in paragraph 18 of this Interim Order (and subject to the limitations thereon contained in such paragraph), the Debtor admits, stipulates and agrees that (collectively, paragraphs E.1 through E.5 below are referred to herein as the "Debtor's Stipulations"):

---

[2]      Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Bankruptcy Rule 7052.

1.      ***First Lien Facilities.***

(a)      *Original Loans.* Under that certain Credit Agreement, dated as of June 20, 2018 (as amended, restated, or otherwise modified from time to time, the "<u>Original Loan Agreement</u>" and, together with all other documentation executed in connection therewith, including without limitation, the Guarantee and Collateral Agreement (as defined in the Original Loan Agreement), and all other Loan Documents (as defined in the Original Loan Agreement) executed in connection therewith, the "<u>Original Loan Documents</u>"), among National CineMedia, LLC ("<u>Borrower</u>"), JPMorgan Chase Bank, N.A., as Administrative Agent (as defined in the Original Loan Agreement and, in such capacity and including any successors thereto, the "<u>Original Loan Administrative Agent</u>"), the lenders from time to time party thereto (such lenders, the "<u>Prepetition Original Lenders</u>" and, together with the Original Loan Administrative Agent and each of the other Secured Parties (as defined in the Original Loan Agreement), the "<u>Prepetition Original Secured Parties</u>") and the other parties thereto, the Borrower borrowed loans thereunder (the "<u>Prepetition Original Loans</u>") consisting of (x) Term Loans (as defined in the Original Loan Agreement) of up to $270 million in Term Loan Commitments (as defined in the Original Loan Agreement), (y) New Incremental Term Loans (as defined in the Original Loan Agreement) of up to $50 million in New Incremental Term Loan Commitments (as defined in the Original Loan Agreement) and (z) Revolving Credit Loans (as defined in the Original Loan Agreement) and other extensions of credit, including the issuance of letters of credit, of up to $175 million in Revolving Credit Commitments (as defined in the Original Loan Agreement).

(b)      As of the Petition Date, the Borrower owed, and was liable to, the Prepetition Original Secured Parties pursuant to the Original Loan Documents, without objection, defense, counterclaim, or offset of any kind, (x) an aggregate principal amount of not

less than $257.9 million of Term Loans, an aggregate principal amount of not less than $49.1 million of New Incremental Term Loans and an aggregate principal amount of not less than $167 million of Revolving Credit Loans and other extensions of credit, including not less than $800,000 in issued and outstanding letters of credit, plus (y) all accrued and unpaid interest with respect thereto and any additional fees, costs, premiums, expenses (including any attorneys', accounts', consultants', appraisers', financial advisors', and other professionals' fees and expenses), reimbursement obligations, indemnification obligations, guarantee obligations, other contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, and all other Obligations (as defined in the Original Loan Agreement) owing under or in connection with the Original Loan Documents (clauses (x) and (y), collectively, the "Prepetition Original Loan Secured Indebtedness").

        (c)    *New Revolving Credit Facility*. Under that certain Credit Agreement dated as of January 5, 2022 (as amended, restated, or otherwise modified from time to time, the "New Revolving Credit Agreement;" and, together with all other documentation executed in connection therewith, including without limitation, the Guarantee and Collateral Agreement (as defined in the New Revolving Credit Agreement), and all other Loan Documents (as defined in the New Revolving Credit Agreement), collectively, the "New RCF Documents"), by and among the Borrower, Wilmington Savings Fund Society, FSB, as administrative and collateral agent thereunder (in such capacity, the "New RCF Administrative Agent"; and together with the Original Loan Administrative Agent, the "Prepetition Agents"), and the several lenders from time to time parties thereto (such lenders, the "Prepetition New RCF Lenders", and together with the New RCF Administrative Agent, the "Prepetition New RCF Secured Parties"), the Borrower borrowed revolving loans thereunder (the "Prepetition New RCF Loans") in an

amount of $50 million in Revolving Credit Commitments (as defined in the New Revolving Credit Agreement).

(d)    As of the Petition Date, the Borrower owed the Prepetition New RCF Secured Parties pursuant to the New RCF Documents, without objection, defense, counterclaim, or offset of any kind, (x) in the aggregate principal amount of not less than $50 million on account of Revolving Credit Loans (as defined in the New Revolving Credit Agreement) plus (y) all accrued and unpaid interest with respect thereto and any additional fees, costs, premiums, expenses (including any attorneys', accounts', consultants', appraisers', financial advisors', and other professionals' fees and expenses), reimbursement obligations, indemnification obligations, guarantee obligations, other contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, and all other Obligations (as defined in the New Revolving Credit Agreement) owing under or in connection with the New RCF Documents (clauses (x) and (y),   collectively, the "Prepetition New RCF Secured Indebtedness").

(e)    5.875% *Senior Secured Notes*. The Borrower, as Issuer, and Wells Fargo Bank, National Association, as Trustee (as defined in the 5.875% Notes Indenture; in such capacity and including any successors thereto, the "**Notes Trustee**"; and collectively with the Holders of the Securities (as each term is defined in the 5.875% Notes Indenture), the "Prepetition Notes Secured Parties," and together with the Prepetition Original Secured Parties and Prepetition New RCF Secured Parties, the "Prepetition Secured Parties") are parties to that certain Indenture, dated as of October 8, 2019 (as amended, restated, supplemented, or otherwise modified from time to time, the "5.875% Notes Indenture" and, together with all other related documents, instruments, and agreements, in each case as supplemented, amended, restated, or

otherwise modified from time to time,  the "5.875% Notes Documents"; and, together with the Original Loan Documents and the New RCF Documents, the "Prepetition Documents"), pursuant to which the 5.875% Senior Secured Notes due 2028 (the "5.875% Notes") were issued.

(f)     As of the Petition Date, the Borrower was indebted to the Prepetition Notes Secured Parties pursuant to the 5.875% Notes Documents, without objection, defense, counterclaim, or offset of any kind, (x) in the aggregate principal amount of not less than $400 million plus (y) all accrued and unpaid interest with respect thereto and any additional fees, premiums, costs, expenses (including any attorneys', accountants', consultants', appraisers', financial advisors', and other professionals' fees and expenses), reimbursement obligations, indemnification obligations, guarantee obligations, other contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, and all other Obligations (as defined in the 5.875% Notes Indenture) owing under or in connection with the 5.875% Notes Documents (clauses (x) and (y), collectively, the "Prepetition Notes Indebtedness" and, together with the Prepetition Original Loan Secured Indebtedness and the Prepetition New RCF Secured Indebtedness, the "Prepetition Secured Indebtedness").

(g)     *Collateral*.   In connection with each of the Original Loan Agreement, the New Revolving Credit Agreement and the 5.875% Notes Indenture and to secure the applicable Prepetition Secured Indebtedness, the Debtor entered into various security and collateral documents in favor of the applicable Prepetition Agent or Notes Trustee (collectively, the "First Lien Security Documents").  Pursuant to the First Lien Security Documents and any other applicable Prepetition Document, the Prepetition Secured Indebtedness is secured by valid, binding, perfected, and enforceable first-priority (*pari passu*) security interests in and liens on (such security interests and liens, the "Prepetition Liens") the "Collateral" (as defined in the

applicable First Lien Security Documents, and together with any other property the Debtor granted or pledged as collateral pursuant to any of the First Lien Security Documents to secure the Prepetition Secured Indebtedness, the "Prepetition Collateral") consisting of substantially all of the assets of the Debtor.

(h)       *Validity, Perfection, and Priority of Prepetition Liens and Prepetition Secured Indebtedness*.  The Debtor acknowledges and agrees that, in each case as of the Petition Date: (i) the Prepetition Liens encumber all of the Prepetition Collateral, as the same existed on the Petition Date; (ii) the Prepetition Liens are valid, binding, enforceable, non-avoidable, and properly perfected liens on and security interests in the Prepetition Collateral; (iii) the Prepetition Liens were granted to or for the benefit of the applicable Prepetition Secured Parties for fair consideration and reasonably equivalent value and were granted contemporaneously with, or covenanted to be provided as an inducement for, the making of the loans and/or commitments and other financial accommodations secured thereby; (iv) the Prepetition Secured Indebtedness constitutes legal, valid, binding, and non-avoidable obligations of the Debtor and is enforceable in accordance with their terms; (v) no offsets, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Secured Indebtedness exist, and no portion of the Prepetition Liens or Prepetition Secured Indebtedness is subject to any challenge, cause of action, or defense, including impairment, set-off, right of recoupment, avoidance, attachment, disallowance, disgorgement, reduction, recharacterization, recovery, subordination (whether equitable or otherwise), attack, offset, contest, defense, counterclaims, cross-claims, or "claim" (as defined in the Bankruptcy Code), pursuant to the Bankruptcy Code or applicable nonbankruptcy law; and (vi) the Debtor and its estate have no claims, objections, challenges, causes of actions,

recoupments, counterclaims, cross-claims, setoff rights, and/or choses in action, including "lender liability" causes of action or avoidance claims under chapter 5 of the Bankruptcy Code, whether arising under applicable state law or federal law (including any recharacterization, subordination, avoidance, disgorgement, recovery, or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy Code), against the Prepetition Secured Parties or any of their respective affiliates, agents, representatives, attorneys, advisors, professionals, officers, directors, and employees in such capacity arising out of, based upon, or related to the First Lien Security Documents, the Prepetition Documents, the Prepetition Secured Indebtedness or the Prepetition Liens.

2.      *Cash Collateral.*  All of the Debtor's cash constitutes cash collateral of the Prepetition Secured Parties within the meaning of Bankruptcy Code section 363(a) (the "Cash Collateral"), including amounts generated by the collection of Prepetition Collateral, including but not limited to accounts receivable, all other cash proceeds of the Prepetition Collateral and amounts now or hereafter held in any of the Debtor's banking, checking, or other deposit accounts as of the Petition Date or amounts deposited or transferred into the Debtors' banking, checking, or deposit accounts after the Petition Date.

3.      *Bank Accounts.*  The Debtor acknowledges and agrees that, as of the Petition Date, the Debtor does not maintain any bank accounts other than those accounts listed in the exhibit attached to any order authorizing the Debtor to continue to use the Debtor's existing cash management system.

4.      *Intercreditor Agreement.*

(a)      Reference is hereby made to that certain Intercreditor Agreement, dated as of April 27, 2012 (as amended, restated, supplemented or otherwise modified from time

to time, the "Intercreditor Agreement"), pursuant to which the Prepetition Secured Parties, by the Prepetition Agents and/or the Notes Trustee executing joinders thereto, are parties thereto or otherwise bound thereby.  The Intercreditor Agreement which, among other things, governs the rights, interests, obligations, priority, and positions of the liens and claims of the Prepetition Secured Parties provides that the Prepetition Liens on the Prepetition Collateral are first priority (*pari passu*) liens.

(b)     Each of the Prepetition Secured Parties are either parties to, or otherwise have acknowledged and agreed to be bound by, the Intercreditor Agreement. Pursuant to section 510 of the Bankruptcy Code, the Intercreditor Agreement and any other applicable intercreditor or subordination provisions contained in any of the Prepetition Documents or any other Secured Debt Documents (as defined in the Intercreditor Agreement) (i) are in full force and effect and binding and enforceable in accordance with their terms, (ii) continue to govern the relative obligations, priorities, rights and remedies of the Prepetition Secured Parties and (iii) shall not be deemed to be amended, altered or modified by the terms of this Interim Order unless expressly set forth herein or therein.

F.     ***Adequate Protection.*** Pursuant to sections 105, 361, 362 and 363(e) of the Bankruptcy Code, the Prepetition Secured Parties are entitled to adequate protection of their respective interests in the Prepetition Collateral, including the Cash Collateral, to the extent of any diminution in value of their respective interests in the Prepetition Collateral resulting from, among other things, the Carve Out, the use of Cash Collateral, the use, sale or lease of any of the Prepetition Collateral, the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code, and/or for any other reason for which adequate protection may be granted under the Bankruptcy Code ("Diminution in Value"). The foregoing shall not, nor shall any

provision of this Interim Order be construed as, a determination or finding that there has been or will be any Diminution in Value of the Prepetition Collateral (including Cash Collateral) and the rights of all parties as to such issues are hereby preserved.  Based on the Motion, the Ng Declaration and the record presented to the Court at the Interim Hearing, the terms of the proposed adequate protection arrangements and the use of the Prepetition Collateral, including Cash Collateral, are fair and reasonable and reflect the Debtor's prudent business judgment.

G.      ***Need to Use Cash Collateral.***   The Debtor has requested entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and has an immediate and critical need to obtain use of the Prepetition Collateral, including the Cash Collateral (subject to and in compliance with the Approved Budget and the Budget Provisions (each as defined below) in accordance with paragraph 3 hereof) in order to, among other things, (A) permit the orderly continuation of its business, (B) pay certain adequate protection payments; and (C) pay the costs of administration of its estate, including the payment of professional fees and expenses, and to satisfy other working capital and general corporate needs of the Debtor.  Access to liquidity through the use of the Cash Collateral, consistent with the Approved Budget and the Budget Provisions through the date of the Final Hearing  is vital to the Debtor and its efforts to maximize the value of its estate.  Absent entry of this Interim Order, the Debtor's estate and reorganization efforts will be immediately and irreparably harmed.

H.      ***Notice***.   In accordance with Bankruptcy Rules 2002, 4001(b) and (c), and 9014, and Local Rule 2002-1, notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtor to the Notice Parties (as defined in the Motion) as set forth therein.  Under the circumstances, the notice given by the Debtor of (and as described in)

the Motion, the relief requested herein, and the Interim Hearing complies with Bankruptcy Rules 2002, 4001(b) and (c), and 9014 and Local Rule 2002-1.

I.      ***Consent by Prepetition Secured Parties***.  As set forth in the RSA, the requisite consents of the Prepetition Secured Parties have been obtained under the applicable provisions of the Prepetition Documents (and the Prepetition Agents and the Notes Trustee are deemed to consent pursuant to the Intercreditor Agreement, the applicable Prepetition Documents and as provided in the RSA, as applicable) to the Debtor's use of Cash Collateral in accordance with and subject to the terms and conditions provided for in this Interim Order.

J.      ***Relief Essential; Best Interest***.  The Debtor has requested entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2).  The relief requested in the Motion (and as provided in this Interim Order) is necessary, essential and appropriate for the continued operation of the Debtor's business, the administration of the Case and the management and preservation of the Debtor's assets and the property of its estate.  It is in the best interest of the Debtor's estate that the Debtor be allowed to use the Cash Collateral under the terms hereof.  The Debtor has demonstrated good and sufficient cause for the relief granted herein.  The terms of the Order and the use of Cash Collateral are fair and reasonable and reflect the Debtor's exercise of prudent business judgment consistent with the Debtor's fiduciary duties.

K.      ***Arm's Length, Good Faith Negotiations***.  The terms of this Interim Order were negotiated in good faith and at arm's length between the Debtor and the Prepetition Secured Parties. The Prepetition Secured Parties have acted without negligence, in good faith and not in violation of public policy or law in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining requisite approvals

of the use of Cash Collateral on the terms set forth herein, including in respect of the granting of adequate protection as provided for herein and all documents and transactions related thereto.

Now, therefore, upon the record of the proceedings heretofore held before this Court with respect to the Motion, the evidence adduced at the Interim Hearing, and the statements of counsel thereat, and based upon the foregoing findings and conclusions,

**IT IS HEREBY ORDERED THAT:**

1.  ***Motion Granted.***  The Motion is granted on an interim basis as set forth herein, and the use of Cash Collateral on an interim basis is authorized, subject to the terms of this Interim Order.

2.  ***Objections Overruled.***  Any objections to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived or settled and all reservations of rights included therein, are hereby denied and overruled in all respects.

3.  ***Authorization to Use Cash Collateral; Budget.***

(a)  *Authorization.*  Subject to the terms and conditions of this Interim Order, the Court hereby authorizes the Debtor's use of Cash Collateral during the period beginning with the Petition Date and ending on a Termination Date (as defined below), in each case, solely and exclusively in a manner consistent with and not in violation of this Interim Order, the Approved Budget and the budget related provisions set forth in this paragraph 3 (collectively, the "Budget Provisions").

(b)  *Approved Budget; Budget Period.*  As used in this Interim Order: (i) "Approved Budget" means the budget attached hereto as Exhibit 1, as such Approved Budget may be modified or extended from time to time by the Debtor with the prior written consent of the Ad Hoc Group (as defined below) in its sole discretion as set forth in this paragraph and this

Interim Order; and (ii) "<u>Budget Period</u>" means the initial four-week (4-week) period set forth in the Approved Budget, and each rolling four-week period thereafter.

(c)     *Budget Testing*.  The Debtor may use Cash Collateral in accordance with the Approved Budget, subject to Permitted Variances (as defined below), and in accordance with the Budget Provisions.  Permitted Variances for each Budget Period shall be reported by no later than the Wednesday following the last Friday of each Budget Period (each such date, a "<u>Testing Date</u>").  On or before 5:00 p.m. (prevailing Central time) on each Testing Date, the Debtor shall prepare and deliver to the Prepetition Agents, the Notes Trustee, the Ad Hoc Group, and the Ad Hoc Group Advisors, in form and substance reasonably satisfactory to the Ad Hoc Group Advisors, a variance report (the "<u>Variance Report</u>") setting forth for the week then ended as well as the Budget Period just ended: (i) the Debtor's actual disbursements (the "<u>Actual Disbursements</u>") on a line-by-line and aggregate basis; (ii) the Debtor's actual cash receipts (the "<u>Actual Cash Receipts</u>") on a line-by-line and aggregate basis; (iii) a comparison (whether positive or negative, in dollars and expressed as a percentage) for the Actual Cash Receipts (and each line item thereof) and the Actual Disbursements (and each line item thereof) to the amount of the Debtor's projected cash receipts (and each line item thereof) and projected disbursements (and each line item thereof), respectively, as set forth in the Approved Budget for the applicable week; (iv) a cumulative comparison (whether positive or negative, in dollars and expressed as a percentage) covering the Budget Period setting forth the Actual Cash Receipts (and each line item thereof) and the Actual Disbursements (and each line item thereof) against the amount of the Debtor's projected cash receipts (and each line item thereof) and projected disbursements (and each line item thereof), respectively, as set forth in the Approved Budget for such Budget Period; and (v) as to each variance contained the Variance Report, an indication as

to whether such variance is temporary or permanent and an analysis and explanation in reasonable detail for any variance.

(d)     *Professional Fee Reserve Account*. Upon entry of this Interim Order, the Debtor may, but shall not be obligated to in consultation with the Ad Hoc Group, establish a separate segregated account not subject to the control or liens of any party, which shall be for the sole purpose of reserving for and paying unpaid Allowed Professional Fees (the "Professional Fee Reserve Account").  As soon as reasonably practicable following the end of each month, the Debtor may, but shall not be obligated to, in consultation with the Ad Hoc Group, fund the Professional Fee Reserve Account in an amount not to exceed 20%  of the amount of professional fees accrued and unpaid as of the end of the prior month,  including any amounts required to be held back pursuant to an order of the Court (such amounts, the "Reserve Amounts"), and such Reserve Amounts may be applied from time to time to pay any such professional fees. The Professional Fee Reserve Account shall be decreased on a dollar-for-dollar basis for the amount paid to such Professional Person (and may be trued-up for any subsequent amounts accrued and unpaid). Upon the delivery of a Carve Out Trigger Notice (defined below), all funds in the Professional Fee Reserve Account shall be used first to pay the Pre-Carve Out Amounts (defined below) and/or to fund the Carve Out Reserves (as defined below).  If, after payment in full of all amounts included in the Pre-Carve Out Trigger Notice Cap (defined below) and Post-Carve Out Trigger Notice Cap (defined below), the Professional Fee Reserve Account has not been reduced to zero, all remaining funds shall be returned to the Debtor, subject to the liens and claims of the Prepetition Secured Parties. For the avoidance of doubt, the Debtor's obligation to pay Allowed Professional Fees shall not be limited or deemed limited to funds held in the Professional Fee Reserve Account.

(e)     *Permitted Variances and Minimum Liquidity Amount*.  The Debtor shall not permit during any Budget Period (i)  the Actual Disbursements to be more than 110% of the projected disbursements in the aggregate for such Budget Period; (ii) Actual Cash Receipts to be less than 75% of the projected receipts in the aggregate for such Budget Period (such deviations in subsections (i) and (ii), the "Permitted Variances"); or (iii) the Debtor's unrestricted cash and cash equivalents ("Liquidity") to be less than $12.5 million at the end of any week (such amount, the "Minimum Liquidity Amount").  For the avoidance of doubt,  the cash disbursements considered for determining compliance with the Budget Covenant shall exclude the Debtors' disbursements in respect of (x) the restructuring professional fees of the Debtors, any Committee, and the Prepetition Secured Parties on account of professional fees under paragraph 4(c) of this Interim Order and (y) U.S. Trustee's fees.

(f)     *Proposed Budget Reporting*.  By no later than 5:00 p.m. (prevailing Central Time) on the fifth (5th) business day before the end of the initial Budget Period and each four-week period thereafter, the Debtor shall deliver to the Ad Hoc Group Advisors (as defined below) a rolling 13-week cash flow forecast of the Debtor in the form of the Initial Approved Budget (each, a "Proposed Budget"), which Proposed Budget (including any subsequent revisions to any such Proposed Budget), solely upon written approval by the Ad Hoc Group (as defined below) in its sole discretion, shall become the Approved Budget effective as of the first day of the fifth week of the prior Approved Budget (and on a rolling four-week basis thereafter). In the event the conditions for the most recently delivered Proposed Budget to constitute the Approved Budget are not met as set forth herein, the prior Approved Budget shall remain in full force and effect; *provided, however*, in the event the Ad Hoc Group does not approve a Proposed Budget within ten (10) business days of its delivery, the Debtor may request an emergency

hearing with the Court (but on not less than five (5) business days' written notice to the Ad Hoc Group) to seek Court approval of the Proposed Budget for purposes of this Interim Order. When required under the terms of this Interim Order, the consent or approval of the Ad Hoc Group shall mean the consent of the Required Consenting Creditors (as defined in the RSA (as defined below)), and such consent or approval may be communicated via email to the Debtor or its professionals by the Ad Hoc Group Advisors.

(g)     *Miscellaneous*.  For the avoidance of doubt, except as otherwise set forth in the Approved Budget, Cash Collateral may not be used by, or to pay the fees, costs or expenses of, any of the Debtor's affiliated non-debtor entities.

4.     ***Adequate Protection for the Prepetition Secured Parties.***  Subject only to the Carve Out and the terms of this Interim Order, pursuant to sections 361, 362, and 363(e) of the Bankruptcy Code, and in consideration of the stipulations and consents set forth herein, as adequate protection of the interests of the Prepetition Secured Parties in the Prepetition Collateral (including Cash Collateral), in each case for the Diminution in Value of such interests, resulting from, among other things, the Carve Out, the use of Cash Collateral, the use, sale or lease of any of the Prepetition Collateral, the imposition of the automatic stay pursuant to section 362(a) of the Bankruptcy Code, and/or for any other reason for which adequate protection may be granted under the Bankruptcy Code, each of the Prepetition Agents, for the benefit of itself and the other Prepetition Original Loan Secured Parties and Prepetition New RCF Secured Parties, and the Notes Trustee, for the benefit of itself and the Prepetition Notes Secured Parties, are hereby granted the following:

(a)     *Adequate Protection Liens*.  Pursuant to Bankruptcy Code sections 361(2) and 363(c)(2), and subject in all cases to the Carve Out, effective as of the Petition Date and in

each case perfected without the necessity of the execution by the Debtor (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or by possession or control by any of the Prepetition Agent or the Notes Trustee or any other party, the Debtor is authorized to grant, and hereby is deemed to have granted, to each of the Prepetition Agents, for the benefit of itself and the other Prepetition Original Loan Secured Parties and Prepetition New RCF Secured Parties, as applicable, and the Notes Trustee, for the benefit of itself and the Prepetition Notes Secured Parties, valid, binding, continuing, enforceable, fully-perfected, nonavoidable, first-priority senior (except as otherwise provided in this paragraph below with respect to the Permitted Prior Liens (as defined below) and the Carve Out), additional and replacement security interests in and liens on (all such liens and security interests, the "Adequate Protection Liens") (i) the Prepetition Collateral and (ii) all of the Debtor's now-owned and hereafter-acquired real and personal property, assets and rights, including all prepetition property and post-petition property of the Debtor of any kind or nature, wherever located, whether encumbered or unencumbered, including, without limitation, a 100% equity pledge of any first-tier foreign subsidiaries and any unencumbered assets of the Debtor, if any, and all prepetition property and post-petition property of the Debtor's estate, and the proceeds, products, rents and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, including, without limitation, all equipment, goods, accounts, cash, payment intangibles, bank accounts and other deposit or securities accounts of the Debtor (including any accounts opened prior to, on, or after the Petition Date), insurance policies and proceeds thereof, equity interests, instruments, intercompany claims, accounts receivable, other rights to payment, all general intangibles, all contracts and contract rights, securities, investment property, letters of credit and letter of credit rights, chattel paper, all

interest rate hedging agreements, all owned real estate, real property leaseholds, fixtures, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, all commercial tort claims, and all claims and causes of action (including causes of action arising under section 549 of the Bankruptcy Code, claims arising on account of transfers of value from the Debtor to a non-Debtor affiliate incurred on or following the Petition Date), and any and all proceeds, products, rents, and profits of the foregoing (all property identified in this paragraph being collectively referred to as the "Collateral"), subject only to the Permitted Prior Liens and the Carve Out, in which case the Adequate Protection Liens shall be immediately junior in priority to such Permitted Prior Liens and to the Carve Out; notwithstanding the foregoing, the Collateral shall exclude the Carve Out Reserves (other than with respect to the residual interest therein as provided in paragraph 5(c) hereof) and all claims and causes of action arising under any section of chapter 5 of the Bankruptcy Code (other than claims and causes of action arising under section 549 of the Bankruptcy Code) (the "Avoidance Actions"), but, subject to entry of a Final Order, shall include any and all proceeds of and other property that is recovered or becomes unencumbered as a result of (whether by judgment, settlement, or otherwise) any Avoidance Action ("Avoidance Proceeds"); *provided, however*, that pending entry of the Final Order (and all rights are reserved with respect thereto), the Adequate Protection Liens shall not attach to the Debtor's interest in any non-residential real property leases, but shall attach to the proceeds thereof, effective upon entry of the Interim Order. As used herein, "Permitted Prior Liens" shall mean any legal, valid, binding, perfected, enforceable liens on or security interests in the Prepetition Collateral as of the Petition Date which have priority over the Prepetition Liens that are not subject to avoidance, recharacterization, offset,

subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law or other challenge.

(b)     *Adequate Protection Superpriority Claims*.     As further adequate protection, and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, the Debtor is authorized to grant, and hereby is deemed to have granted effective as of the Petition Date, to each of the Prepetition Agents, for the benefit of itself and the other Prepetition Original Loan Secured Parties and Prepetition New RCF Secured Parties, as applicable, and the Notes Trustee, for the benefit of itself and the Prepetition Notes Secured Parties, allowed superpriority administrative expense claims in the Case ahead of and senior to any and all other administrative expense claims in the Case to the extent of any Diminution in Value (the "Adequate Protection Superpriority Claims"), junior only to the Carve Out.  Subject to the Carve Out, the Adequate Protection Superpriority Claims shall not be junior or *pari passu* to any other administrative claims against the Debtor and shall have priority over all now or hereinafter incurred administrative expense claims against the Debtor, including, without limitation, administrative expense claims of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 546(c), 726, 1113 and 1114 of the Bankruptcy Code; *provided that* any recovery against Avoidance Proceeds shall be subject to entry of a Final Order.

(c)     *Fees and Expenses*.  As additional adequate protection, the Debtor shall, and is authorized and directed to, pay in full in cash and in immediately available funds: (i) within three (3) business days after the Debtor's receipt of invoices therefor, the professional fees, expenses and disbursements (including, but not limited to, the professional fees, expenses and disbursements of counsel and other third-party consultants and/or experts, including

financial advisors) incurred prior to the Petition Date by (A) the ad hoc group of certain holders of the Debtor's Prepetition Secured Indebtedness (the "Ad Hoc Group") (including, without limitation, reasonable fees, expenses and disbursements incurred by Centerview Partners, as financial advisor, Gibson, Dunn & Crutcher LLP, as primary counsel, and Munsch Hardt Kopf & Harr, as local counsel, collectively, the "Ad Hoc Group Advisors") and (B) the Prepetition Agents and the Notes Trustee; and (ii) subject to paragraph 25, the reasonable fees and expenses incurred on and after the Petition Date by the Ad Hoc Group Advisors or by or on behalf of the Prepetition Agents or the Notes Trustee (including, without limitation, professional fees, expenses and disbursements of counsel), which shall be submitted on a monthly basis and paid within ten (10) days of the Debtor's receipt of invoices therefor ((i) and (ii) collectively, the "Adequate Protection Payments").  Notwithstanding the foregoing, the Ad Hoc Group may retain such other professionals as are reasonably necessary in connection with the Case, on advance notice to and with the consent (not to be unreasonably withheld) of the Debtor (to the extent reimbursement from the Debtor is sought), and in such circumstance, such additional professionals shall be deemed to be Ad Hoc Group Advisors for purposes of this Interim Order. None of the foregoing fees, expenses and disbursements shall be subject to separate approval by this Court or require compliance with the U.S. Trustee guidelines, and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto or otherwise seek the Court's approval of any such payments.

(d)     *Reporting Requirements*.   As additional adequate protection to the Prepetition Secured Parties, the Debtor shall use reasonable best efforts to comply with those reporting requirements set forth in the Original Loan Agreement, New Revolving Credit Agreement and the 5.875% Notes Indenture that are necessary or required for NCMI (as defined

in the RSA referred to below) to remain a reporting company under the applicable provisions of the securities laws or other applicable law, rule or regulation, and shall further provide, subject to any applicable limitations set forth below, to (i) the Ad Hoc Group, (ii) the Ad Hoc Group Advisors and (iii) counsel to the Prepetition Agents and the Notes Trustee:

(i)     weekly (or with such other frequency as may be agreed to between the Debtor and the Ad Hoc Group) calls with the Ad Hoc Group and the Ad Hoc Group Advisors with respect to (a) business updates, (b) the Debtor's discussions with any potential financing party, strategic partner, or acquirer, and (c) the status of any material litigation, litigation claims, and other claims, and (d) any other updates in form and scope reasonably agreed by the Debtor and the Ad Hoc Group;

(ii)    at the times specified in paragraph 3(c) hereof, the Variance Report required by paragraph 3(c) hereof;

(iii)   a copy of each update to the Debtor's business plan as soon as reasonably practicable after it becomes available, together with a reconciliation to the prior business plan;

(iv)    timely delivery of each Proposed Budget as set forth in this Interim Order;

(v)     notice of the occurrence of the Debtor's Liquidity falling below the Minimum Liquidity Amount at the end of any week and the amount of such Liquidity as of such time; and

(vi)    promptly, and in any event by the thirtieth (30th) calendar day of each month, beginning with the year-to-date period ended on the last day of the month in which the Petition Date occurs, a monthly and year-to-date income statement and balance sheet; and

(vii)   as soon as reasonably practicable after written request from the Ad Hoc Group Advisors, the Debtor will provide the Ad Hoc Group and the Ad Hoc Group Advisors with reasonable access to any consultant, turnaround management, broker or financial advisory firm retained by the Debtor in the Case, and if requested, copies of all retention agreements for each such consultant.

(e)     *Other Covenants*. The Debtor shall maintain its cash management arrangements in a manner consistent with this Court's order(s) granting the Debtor's cash management motion. The Debtor shall not sell, lease (other than existing leases) or otherwise

dispose of any assets  with an aggregate fair market value in excess of $2.5 million in any single transaction or series of related transactions outside the ordinary course of business, or seek authority of this Court to do any of the foregoing, without the prior written consent of the Ad Hoc Group (with email from the Ad Hoc Group Advisors to Debtor's counsel being sufficient). The Debtor shall not assume or reject any material contract, or seek authority of this Court to assume or reject any material contract, without the prior written consent of the Ad Hoc Group (with email from the Ad Hoc Group Advisors to the Debtor's counsel being sufficient).  The Debtor shall continue to comply in all respects with those covenants contained in the Original Loan Agreement, the New Revolving Credit Agreement and the 5.875% Notes Indenture, in each case as in effect on the Petition Date, solely with respect to the preservation of rights, qualifications, licenses, permits, privileges, franchises, governmental authorizations and intellectual property rights, in each case, that are material to the conduct of the business and the maintenance of properties and insurance.

(f)     *Miscellaneous*.

(i)     Except for (i) the Carve Out and (ii) as otherwise provided in paragraph 4, the Adequate Protection Liens and Adequate Protection Superpriority Claims granted to the Prepetition Secured Parties pursuant to paragraph 4 of this Interim Order shall not be subject, junior, or *pari passu*, to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under the Bankruptcy Code, including, without limitation, pursuant to section 551 or otherwise, and shall not be subordinated to or made *pari passu* with any lien, security interest or administrative claim

under the Bankruptcy Code, including, without limitation, pursuant to section 364 or otherwise.

(ii)  The Adequate Protection Liens are deemed automatically perfected as of the Petition Date without the necessity of recording same and without further notice or order. The Prepetition Agents and the Notes Trustee shall not be required to file any UCC financing statements or other instruments (or to take any other action) to perfect such Adequate Protection Liens.

(iii)  The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or applicable law are hereby modified to the extent necessary to permit the Prepetition Agents and the Notes Trustee to perform any act authorized or permitted under or by virtue of this Order including, without limitation, to take any act to create, validate, evidence, attach or perfect any the Adequate Protection Liens and to receive any payments expressly authorized by this Order with respect to the Prepetition Secured Indebtedness or adequate protection.

(g)  *Right to Seek Additional Adequate Protection*. This Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of any of the Prepetition Secured Parties to request further or alternative forms of adequate protection at any time or the rights of the Debtor or any other party to contest such request. Subject to the Carve Out, nothing herein shall impair or modify the application of section 507(b)

of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties is insufficient to compensate for any Diminution in Value of their interests in the Prepetition Collateral during the Case.  Nothing contained herein shall be deemed a finding by the Court, or an acknowledgment by any of the Prepetition Secured Parties that the adequate protection granted herein does in fact adequately protect any of the Prepetition Secured Parties against any Diminution in Value of their respective interests in the Prepetition Collateral (including the Cash Collateral).

5.      *Carve Out*.

(a)      *Priority of Carve Out*.  Each of the Prepetition Liens, Adequate Protection Liens, the Prepetition Secured Indebtedness and Adequate Protection Superpriority Claims shall be subject and subordinate to payment of the Carve Out.

(b)      *Definition of Carve Out*.  As used in this Interim Order, the "**Carve Out**" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee (the "U.S. Trustee") under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $75,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtor pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") or the Committee (if any) pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before delivery by the Ad Hoc Group of a Carve Out Trigger

Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice, (the amounts set forth in clauses (i) through (iii), the "Pre-Carve Out Trigger Notice Cap"); and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $2,000,000 incurred after the first business day following delivery by the Ad Hoc Group of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise, less the amount of any prepetition retainers received by any such Professional Persons and not previously returned or applied to fees and expenses (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap").  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the Ad Hoc Group or the Ad Hoc Group Advisors to the Debtor's lead restructuring counsel (Paul, Weiss, Rifkind, Wharton & Garrison LLP), the U.S. Trustee and counsel to the Committee (if any), which notice may be delivered following the occurrence and during the continuation of a Termination Event stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(c)     *Carve Out Reserve*.  Notwithstanding the occurrence of a Termination Event, upon delivery of a Carve Out Trigger Notice on the Termination Declaration Date (as defined below), such Carve Out Trigger Notice shall constitute a demand to the Debtor to utilize all cash on hand as of such date and any available cash thereafter held by the Debtor to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees plus a reasonable estimate of fees and expenses not yet allowed for the period through and including the Termination Declaration Date (the "Allowed and Estimated Professional Fees").  The Debtor shall deposit and hold such amounts in a segregated account in trust to pay such Allowed and Estimated Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to any and all

other claims.  On the Termination Declaration Date, the Carve Out Trigger Notice shall also constitute a demand to the Debtor to utilize all cash on hand as of such date and any available cash thereafter held by the Debtor, after funding the Pre-Carve Out Trigger Notice Reserve, to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap.  The Debtor shall deposit and hold such amounts in a segregated account in trust to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all other claims.  All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in the Pre-Carve Out Trigger Notice Cap (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, any such excess shall be paid to the Prepetition Secured Parties in accordance with their rights and priorities as of the Petition Date.  All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay all the amounts set forth in the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Amounts"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, any such excess shall be paid any unpaid Pre-Carve Out Amounts until paid in full, and then paid to the Prepetition Secured Parties in accordance with their rights and priorities as of the Petition Date. Notwithstanding anything to the contrary in the Prepetition Documents, or this Interim Order: (i) following delivery of a Carve Out Trigger Notice, the Prepetition Agents or the Notes Trustee shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtor until the Carve Out Reserves have been fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess

paid to the Prepetition Agents and Notes Trustee for application in accordance with the Prepetition Documents; (ii)(A) disbursements by the Debtor from the Carve Out Reserves shall not increase or reduce the Prepetition Secured Indebtedness, (B) failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out, (C) in no way shall the Approved Budget, Proposed Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtor; and (iii) the Carve Out shall be senior to all liens and claims securing the Prepetition Secured Indebtedness, the Adequate Protection Liens, the Adequate Protection Superiority Claims, and any claims arising under section 507(b) of the Bankruptcy Code.  Notwithstanding anything to the contrary herein, if either of the Carve Out Reserves is not funded in full in the amounts set forth herein, then any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth herein, prior to making any payments to the Prepetition Secured Parties.

(d)     *No Direct Obligation To Pay Allowed Professional Fees*.  The Prepetition Secured Parties reserve the right to object to the allowance of any fees and expenses, whether or not such fees and expenses were incurred in accordance with the Approved Budget. Except for permitting the funding of the Carve Out Reserves as provided herein, none of the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person or any fees or expenses of the U.S. Trustee or Clerk of the Court incurred in connection with the Case or any successor case(s) under any chapter of the Bankruptcy Code (a "Successor Case").  Nothing in this Interim Order or otherwise shall be

construed to obligate the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtor has sufficient funds to pay such compensation or reimbursement.

(e)     *Payment of Carve Out On or After the Termination Declaration Date.* Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis; *provided, however*, if the Debtor Professionals use their retainers to pay such Allowed Professional Fees, such payments shall not reduce the Carve Out.

6.      ***Access and Information.***

Upon reasonable prior written notice (as applicable, including via acknowledged electronic mail) during normal business hours, the Debtor shall provide the Ad Hoc Group Advisors with (a) reasonable access to the Debtor's books and records, including all records and files of the Debtor pertaining to the Prepetition Collateral and the Collateral and other available information (including historical information) regarding the Debtor, its property, operations or finances that they shall reasonably request, (b) reasonable access to the Debtor's properties and (c) reasonable access to the Debtor's officers, counsel and financial advisors to discuss the Debtor's affairs, finances, and condition; it being understood that nothing in this paragraph shall require the Debtor (or any of their advisors) to take any action that would conflict with any applicable requirements of law or any binding agreement, or that would waive any attorney-client or similar privilege.

7.      ***Termination***.

Subject to the Remedies Notice Period (as defined below) and paragraphs 5 and 8 of this Interim Order, including if ordered by the Court in accordance with paragraph 8, the Debtors

right to use Cash Collateral pursuant to this Interim Order shall automatically cease without further court proceedings on the Termination Date (as defined herein).  As used herein, "**Termination Event**" means any of the events set forth below, in each case, unless waived or modified with the consent of the Ad Hoc Group:

(a)     A Final Order acceptable to the Debtor and the Ad Hoc Group is not entered by the Court by 11:59 p.m. on the date that is 45 days after the Petition Date;

(b)     The violation of any material term of this Interim Order by the Debtor that is not cured within five (5) business days of receipt by the Debtor of notice from the Ad Hoc Group or the Ad Hoc Group Advisors of such default, violation or breach (which may be provided to the Debtor by e-mail);

(c)     Entry of any order modifying, reversing, revoking, staying, rescinding, vacating, or amending this Interim Order without the express written consent of the Ad Hoc Group;

(d)     The Case is dismissed or converted to a case under chapter 7 of the Bankruptcy Code, or without the express written consent of the Ad Hoc Group, a trustee under chapter 11 of the Bankruptcy Code, an examiner with expanded powers or a responsible officer or similar person is appointed in the Case, or the Case is transferred or there is a change of venue, or the Debtor files any motion, pleading or proceedings (or solicits, supports, or encourages any other party to file any motion, pleading or proceeding) seeking or consenting to the granting of any of the foregoing relief, or any order is entered granted any of the foregoing relief;

(e)     The Debtor files any motion, pleading, or proceeding (or solicits, supports, or encourages any other party to file any motion, pleading, or proceeding) seeking or consenting

to the granting of, or an order is entered granting, any lien or other interest *pari passu* with or senior to any of the Prepetition Liens, Adequate Protection Liens or Adequate Protection Superpriority Claims granted to the Prepetition Secured Parties under this Interim Order, or any order of the Court is entered reversing, staying for a period in excess of five (5) business days, vacating or otherwise amending, supplementing, or modifying this Interim Order in a manner adverse to the Prepetition Secured Parties, in each case without the written consent of the Ad Hoc Group;

(f)     The Debtor files any motion, pleading, or proceeding (or solicits, supports, or encourages any other party to file any motion, pleading or proceeding) seeking or consenting to, or an order is entered granting, (i) the invalidation, subordination, or other challenge to the Prepetition Secured Indebtedness, the Prepetition Liens, the Adequate Protection Liens, or the Adequate Protection Superpriority Claims or (ii) any relief under sections 506(c) or 552 of the Bankruptcy Code with respect to any Prepetition Collateral or any Collateral, including the Cash Collateral, or against any of the Prepetition Secured Parties, in each case without the written consent of the Ad Hoc Group;

(g)     Other than as expressly permitted hereunder, the Debtor files any motion, pleading or proceeding (or solicits, supports, or encourages any other party to file any motion, pleading or proceeding) seeking or consenting to the granting of, or an order is entered granting, relief which could reasonably be expected to result in a material impairment of the rights or interests of the Prepetition Secured Parties (except any motion or other pleading otherwise expressly permitted by this Interim Order) and such motion, pleading, proceeding or order is not withdrawn or vacated within five (5) Business Days after notice thereof is delivered to the Debtor;

(h)      The entry by this Court of an order granting relief from the automatic stay imposed by section 362 of the Bankruptcy Code to any entity other than the Prepetition Secured Parties (i) with respect to the Prepetition Collateral or the Collateral having a value greater than $500,000 without the written consent of the Ad Hoc Group or (ii) authorizing any party to proceed against any asset having a fair market value of at least $500,000 of the Debtor (other than insurance) or that would adversely affect in any material respect the Debtor's ability to operate its business in the ordinary course, without the written consent of the Ad Hoc Group;

(i)      Unless consented to by the Ad Hoc Group, the entry of a subsequent order of the Court (i) terminating the Debtor's use of Cash Collateral or (ii) authorizing the use of Cash Collateral by any non-Debtor affiliate of the Debtor;

(j)      The failure by the Debtor to make any payment required pursuant to this Interim Order when due that is not cured within five (5) business days of receipt by the Debtor of notice from the Ad Hoc Group or the Ad Hoc Group Advisors of such failure (which may be provided to the Debtor by e-mail);

(k)      The failure by the Debtor to deliver to the Ad Hoc Group or the Ad Hoc Group Advisors any of the documents or other information required to be delivered to such applicable party pursuant to this Interim Order when due, or any such documents or other information shall contain a material misrepresentation, and in either case such failure or misrepresentation is not cured within five (5) Business Days after notice thereof is delivered to the Debtor;

(l)      The failure by the Debtor to (i) comply in any material respect with Budget Provisions set forth in paragraph 3 hereof or (ii) at the end of any week, maintain Liquidity in an amount equal to or greater than the Minimum Liquidity Amount, in either case,

that is not cured within five (5) business days of receipt by the Debtor of notice from the Ad Hoc Group or the Ad Hoc Group Advisors of such default, violation or breach (which may be provided to the Debtor by e-mail);

(m)     The entry of an order of this Court approving the terms of any senior secured or *pari passu* debtor in possession financing that is entered into by the Debtor without the written consent of the Ad Hoc Group;

(n)     Any material contract, including any ESA (as defined in the RSA), of the Debtor shall be terminated (other than as a result of the commencement of the Case, the expiration thereof in accordance with its terms or in connection with the replacement thereof (to the extent such replacement agreement is consented to by the Ad Hoc Group)), or a party to a material contract (other than the Debtor) shall deliver a written notice of non-renewal or termination thereof (other than in connection with the execution of a replacement agreement (to the extent such replacement agreement is consented to by the Ad Hoc Group)) and such non-renewal or termination shall not be revoked, rescinded, suspended or enjoined within ten (10) Business Days thereof (or such later date as the Ad Hoc Group may agree in writing);

(o)     The Debtor files any motion, pleading, or proceeding seeking to assume or reject any material executory contract or unexpired lease without the prior written consent of the Ad Hoc Group;

(p)     The entry of any post-petition judgment against the Debtor in excess of $500,000 (not including amounts covered by insurance) the enforcement of which is not otherwise stayed by the Bankruptcy Code or otherwise;

(q)     The Debtor shall be enjoined from conducting any material portion of its business, any material disruption of the business operations of the Debtor shall occur (other than

as a result of the Case), or any material damage to or loss of material assets of the Debtor shall occur that is not otherwise covered by insurance;

(r)      The Debtor files any motion, pleading, or proceeding (or solicits or supports any other party to file any motion, pleading, or proceeding) seeking or consenting to the granting of, or an order is entered granting, any termination and/or shortening, reduction of, or other modification to, the Debtor's exclusive period to file and/or solicit a chapter 11 plan pursuant to the Bankruptcy Code (collectively, the "Exclusive Periods") or the Debtor otherwise does not seek to extend the Exclusive Periods if and when applicable, in each case, unless otherwise agreed by the Ad Hoc Group;

(s)      The termination of that certain Restructuring Support Agreement dated April 11, 2023 (the "**RSA**") by and among the Debtor, the Ad Hoc Group and the other parties thereto, other than a termination resulting from section 10.02(c) of the RSA;

(t)      Any (i) entry by the Debtor into any settlement or other agreement or (ii) motion, proceeding, or other action is commenced, supported, or encouraged by the Debtor seeking, or otherwise consenting to any settlement of, or other agreement with respect to, in each case, any Exhibitor (as defined in each ESA), without the consent of the Ad Hoc Group;

(u)      NCMI fails to be a reporting company under the applicable provisions of the securities laws or other applicable law, rule or regulation; or

(v)      The failure of the Debtor to meet any of the deadlines (or such later dates as may be approved by the Ad Hoc Group) set forth on Exhibit 2 (collectively, the "Milestones").

8.      *Remedies after a Termination Date*.

(a)      Notwithstanding anything contained herein, the Debtor's authorization to use Cash Collateral hereunder shall automatically terminate on such date (the "Termination Date") that is the earliest of (i) the effective date of any chapter 11 plan with respect to the Debtor that is confirmed by the Court; (ii) the date on which all or substantially all of the assets of the Debtor are sold in a sale under any chapter 11 plan or pursuant to section 363 of the Bankruptcy Code; and (iii) unless otherwise ordered by the Court, five (5) business days from date (the "Termination Declaration Date") on which written notice of the occurrence of any Termination Event is given (which notice may be given by electronic mail or other electronic means) by the Ad Hoc Group or the Ad Hoc Group Advisors to the Debtor's counsel, counsel to a Committee (if appointed), and the U.S. Trustee (the "Termination Declaration" and such period commencing on the Termination Declaration Date and ending five (5) business days later, which period shall be automatically extended if the Debtor or the U.S. Trustee seeks an emergency hearing as provided in clause (b) below prior to the expiration of such period to enable the Court to rule thereon, the "Remedies Notice Period"); *provided that*, until the expiration of the Remedies Notice Period, the Debtor may (a) continue to use Cash Collateral to make payments in respect of expenses reasonably necessary to keep the business of the Debtor operating  in accordance with the Approved Budget, (b) contest or cure any alleged Termination Event, (c) to pay professional fees and fund the Carve Out Reserves and (d) seek other relief as provided for in this paragraph 8.

(b)      If a Termination Declaration is delivered as provided above, the Debtor, the Committee (if  appointed), and the Ad Hoc Group hereby consent to an emergency hearing being held before the Court on an expedited basis and related motions shall be filed with the

Court on at least three (3) business days' notice (subject to the Court's availability) for the sole purpose (unless the Court orders otherwise) of considering whether a Termination Event has occurred or is continuing or for the contested use of Cash Collateral.  Unless the Court has determined that a Termination Event has not occurred and/or is not continuing or the Court orders otherwise, the automatic stay, as to all of the Prepetition Secured Parties, shall automatically be terminated at the end of the Remedies Notice Period without further notice or order.  Upon expiration of the Remedies Notice Period, the Prepetition Agents and the other Prepetition Secured Parties shall be permitted to exercise all remedies set forth herein and in the Prepetition Documents (subject to the Intercreditor Agreement), and as otherwise available at law or in equity without further order of or application or motion to this Court.

    (c)  Nothing herein shall alter the burden of proof set forth in the applicable provisions of the Bankruptcy Code at any hearing on any request by the Debtor or other party in interest to re-impose or continue the automatic stay under Bankruptcy Code section 362(a), use Cash Collateral, or to obtain any other injunctive relief.  Unless otherwise expressly provided, any delay or failure of the Prepetition Agents, Notes Trustee and/or the other Prepetition Secured Parties to exercise rights under the Prepetition Documents, the Intercreditor Agreement, and/or this Interim Order shall not constitute a waiver of their respective rights hereunder, thereunder or otherwise. The occurrence of the Termination Date or a Termination Event shall not affect the validity, priority, or enforceability of any and all rights, remedies, benefits, and protections provided to any of the Prepetition Secured Parties under this Interim Order, which rights, remedies, benefits, and protections shall survive the Termination Date or the delivery of Termination Declaration.

9. ***Payments Free and Clear***.  Subject in all respects to paragraph 18, any and all payments or proceeds remitted to the Prepetition Agents, for the benefit of the Prepetition Original Loan Secured Parties and Prepetition New RCF Secured Parties, and the Notes Trustee, for the benefit of the Prepetition Notes Secured Parties, pursuant to the provisions of this Interim Order shall be irrevocable, received free and clear of any claim, charge, assessment or other liability, including without limitation, subject to entry of a Final Order, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) (whether asserted or assessed by, through or on behalf of the Debtor) or section 552(b) of the Bankruptcy Code.

10. ***Limitation on Charging Expenses Against Collateral.***  Except to the extent of the Carve Out, subject to entry of the Final Order, all rights to surcharge the interests of the Prepetition Secured Parties in any Prepetition Collateral or any Collateral under section 506(c) of the Bankruptcy Code or any other applicable principle or equity or law shall be and are hereby finally and irrevocably waived, and such waiver shall be binding upon the Debtor and all parties in interest in the Case.

11. ***Reservation of Rights of the Prepetition Secured Parties***.  This Interim Order and the transactions contemplated hereby shall be without prejudice to (a) the rights of any of the Prepetition Secured Parties to seek additional or different adequate protection, move to vacate the automatic stay, move for the appointment of a trustee or examiner, move to dismiss or convert the Case, or to take any other action in the Case and to appear and be heard in any matter raised in the Case, or the right of any party in interest from contesting any of the foregoing, and (b) any and all rights, remedies, claims and causes of action which the Prepetition Secured Parties may have against any non-Debtor party; *provided that* nothing in the foregoing paragraph modifies the rights and obligations of the Prepetition Secured Parties under the RSA.  For

adequate protection purposes, each of the Prepetition Secured Parties shall be deemed to have requested relief from the automatic stay and for adequate protection for any Diminution in Value from and after the Petition Date.   For the avoidance of doubt, such request will survive termination of this Interim Order.

12.    ***Modification of Automatic Stay***.   The Debtor is authorized and directed to perform all acts and to make, execute, and deliver any and all instruments as may be necessary to implement the terms and conditions of this Interim Order and the transactions contemplated hereby.   The stay of section 362 of the Bankruptcy Code is hereby modified to permit the parties to accomplish the transactions contemplated by this Interim Order.

13.    ***Survival of Interim Order***.   The provisions of this Interim Order shall be binding upon any trustee appointed during the Case or upon a conversion to a case under chapter 7 of the Bankruptcy Code, and any actions taken in reliance hereof shall survive entry of any order which may be entered converting the Case to a chapter 7 case, dismissing the Case under section 1112 of the Bankruptcy Code or otherwise, confirming or consummating any plan(s) of reorganization or liquidation or otherwise, or approving or consummating any sale of any Prepetition Collateral or Collateral, whether pursuant to section 363 of the Bankruptcy Code or included as part of any plan.   The terms and provisions of this Interim Order, as well as the priorities in payments, liens, and security interests granted pursuant to this Interim Order, shall continue notwithstanding any conversion of the Case to a chapter 7 case under the Bankruptcy Code, dismissal of the Case, confirmation or consummation of any plan(s) of reorganization or liquidation, approval or consummation of any sale, or otherwise.   Subject to the provisions and limitations described in paragraph 18 of this Interim Order, the Adequate Protection Payments made pursuant to this Interim Order shall not be subject to counterclaim, setoff, subordination, recharacterization,

defense or avoidance in the Case or any subsequent chapter 7 case or other proceeding (other than a defense that the payment has actually been made).

14. ***No Third-Party Rights.*** Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder, or any direct, indirect, or incidental beneficiary.

15. ***Release.*** Subject to the rights, provisions and limitations set forth in paragraph 18 of this Interim Order, effective upon entry of this Interim Order, the Debtor shall, to the maximum extent permitted by applicable law, unconditionally, irrevocably, and fully forever release, remise, acquit, relinquish, irrevocably waive, and discharge each of the Prepetition Secured Parties (each in their respective roles as such), and each of their respective affiliates, former, current, or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, assigns, agents, and predecessors in interest, each in their capacity as such, of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending, or threatened, including, without limitation, all legal and equitable theories of recovery, arising under common law, statute, or regulation or by contract, of every nature and description that exist on the date hereof with respect to or relating the Prepetition Original Loans, Prepetition New RCF Loans, 5.875% Notes, the Prepetition Liens, the Prepetition Secured Indebtedness, the Original Loan Documents, New RCF Documents, 5.875% Notes Documents, or this Interim Order, as applicable, and/or the

transactions contemplated hereunder or thereunder, including, without limitation, (i) any so-called "lender liability" or equitable subordination claims or defenses, (ii) any and all claims and causes of action arising under the Bankruptcy Code, and (iii) any and all claims and causes of action regarding the validity, priority, extent, enforceability, perfection, or avoidability of the liens or claims of the Prepetition Secured Parties; *provided*, *however*, that no such parties will be released to the extent determined in a final, non-appealable judgment of a court of competent jurisdiction to have resulted primarily from such parties' gross negligence, fraud, or willful misconduct.

16.     ***Binding Effect.***  The terms of this Interim Order shall be valid and binding upon the Debtor, all creditors of the Debtor and all other parties in interest from and after the entry of this Interim Order by this Court.

17.     ***Reversal, Stay, Modification or Vacatur.***  In the event the provisions of this Interim Order are hereinafter reversed, stayed, modified or vacated, such reversal, modification, stay or vacatur shall not affect the rights and priorities of the Prepetition Secured Parties granted and in effect pursuant to this Interim Order immediately prior thereto.  In other words, notwithstanding any such reversal, stay, modification or vacatur, any indebtedness, obligation or liability incurred by the Debtor pursuant to this Interim Order arising prior to the effective date of such reversal, stay, modification or vacatur shall be governed in all respects by the original provisions of this Interim Order, including any payments made hereunder or security interests and liens granted herein.

18.     ***Reservation of Certain Third-Party Rights and Bar of Challenge and Claims.***

(a)     The stipulations, admissions, waivers, and releases contained in this Interim Order, including the Debtor's Stipulations, shall be binding upon the Debtor in all

circumstances and for all purposes, and the Debtor is deemed to have irrevocably waived and relinquished all Challenges (as defined below) as of the Petition Date. The stipulations, admissions, waivers and releases contained in this Interim Order, including, the Debtor's Stipulations and the release in paragraph 15 (the "**_Release_**"), shall be binding upon the Debtor's estate (and all successors of the Debtor) and all other parties in interest, including any Committee and any other person acting on behalf of the Debtor's estate, including a trustee, except to the extent a party in interest and, for purposes of such exception, solely to the extent such party in interest obtains proper standing and has timely and properly filed an adversary proceeding or contested matter under the Bankruptcy Rules asserting a Challenge (as defined below) on or before the date that is seventy-five (75) calendar days after entry of the Interim Order; *provided* that if a Committee is appointed prior the expiration of such seventy-five day period, such Committee shall have until the later of such seventy-five (75) day period and the date that is sixty (60) calendar days after its appointment, except that in no event shall the deadline described above extend beyond the first day of any hearing held in the Case to consider confirmation of a chapter 11 plan for the Debtor (the "Challenge Period Termination Date"); *provided however* that if, prior to the Challenge Period Termination Date, either the Case converts to chapter 7 or a chapter 11 trustee is appointed, then in such case the Challenge Period Termination Date shall be extended solely with respect to the trustee until the later of the then Challenge Period Termination Date and the date that is twenty (20) days following such conversion or appointment; (ii) seeking to avoid, object to, or otherwise challenge the Debtor's Stipulations or the Release regarding: (A) the validity, enforceability, extent, priority, or perfection of Prepetition Liens, including any mortgages or security interests in the Prepetition Collateral; or (B) the validity, enforceability, allowability, priority, secured status, or amount of the Prepetition

Secured Indebtedness (any such claim, a "Challenge"); and (iii) in which the Court enters a final order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter.

(b)     Upon the occurrence of the Challenge Period Termination Date without the filing of a Challenge (or if any Challenge is filed and overruled): (i) any and all Challenges by any party (whether on behalf of the Committee, any chapter 11 trustee, and/or any examiner or other estate representative appointed or elected in the Case, and any chapter 7 trustee and/or examiner or other estate representative appointed or elected in any Successor Cases (as defined below)) shall be deemed to be forever barred; (ii) the Prepetition Secured Indebtedness shall constitute allowed secured claims, not subject to counterclaim, setoff, recoupment, reduction, subordination, recharacterization, defense, or avoidance for all purposes in the Case and any Successor Cases; (iii) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, and perfected liens on the Prepetition Collateral, not subject to recharacterization, subordination, or avoidance; and (iv) all of the Debtor's stipulations and admissions contained in this Interim Order, including the Debtor's Stipulations, and all other waivers, releases, affirmations, and other stipulations as to the priority, extent, and validity as to the Prepetition Secured Parties' claims, liens, and interests contained in this Interim Order shall be in full force and effect and forever binding upon the Debtor, the Debtor's estate, and all creditors, interest holders, and other parties in interest in this Case and any Successor Cases.

(c)     If any such adversary proceeding or contested matter is timely and properly filed under the Bankruptcy Rules, the stipulations and admissions contained in this Interim Order, including the Debtor's Stipulations, shall nonetheless remain binding and preclusive on any Committee and any other party-in-interest except to the extent that such

stipulations and admissions were successfully and expressly challenged in such adversary proceeding or contested matter prior to the Challenge Period Termination Date.  Nothing in this Interim Order vests or confers on any person (as defined in the Bankruptcy Code), including, without limitation, any Committee appointed in the Case, standing or authority to pursue any cause of action belonging to the Debtor or its estate, including, without limitation, any challenges (including a Challenge) with respect to the Prepetition Documents, the Intercreditor Agreement, the Prepetition Liens, and the Prepetition Secured Indebtedness, and a separate order of the Court conferring such standing on any Committee or other party-in-interest shall be a prerequisite for the prosecution of a Challenge by such Committee or such other party-in-interest.

19.     ***Limitation on Use of Collateral and Cash Collateral.***  Notwithstanding anything to the contrary set forth in this Interim Order, none of the Collateral, the Prepetition Collateral, including Cash Collateral, or the Carve Out or proceeds of any of the foregoing may be used: (a) to investigate (including by way of examinations or discovery proceedings), initiate, assert, prosecute, join, commence, support, or finance the initiation or prosecution of any claim, counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense, adversary proceeding, or other litigation of any type (excluding any proceedings contemplated by paragraph 8 hereof) (i) against any of the Prepetition Secured Parties (in their capacities as such) or any of their respective affiliates, officers, directors, employees, agents, representatives, attorneys, consultants, financial advisors, affiliates, assigns, or successors in such capacity, with respect to any transaction, occurrence, omission, action, or other matter (including formal discovery proceedings in anticipation thereof), including, without limitation, any so-called "lender liability" claims and causes of action, or seeking relief against any of the Prepetition Secured Parties or that that would otherwise impair the rights and remedies of the Prepetition

Secured Parties hereunder, under the Prepetition Documents, or the Intercreditor Agreement, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtor or any Committee appointed (if any) in this Case in connection with the assertion of or joinder in any such claim, counterclaim, action, suit, arbitration, proceeding, application, motion, objection, defense, adversary proceeding, or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment, determination, declaration, or similar relief that would impair the ability of any of the Prepetition Secured Parties to recover on the Prepetition Collateral or the Collateral or seeking affirmative relief against any of the Prepetition Secured Parties related to the Prepetition Secured Indebtedness; (ii) invalidating, setting aside, avoiding, or subordinating, in whole or in part, the Prepetition Secured Indebtedness or the Prepetition Secured Parties' respective Prepetition Liens or security interests in the Prepetition Collateral or the Collateral, as applicable; or (iii) for monetary, injunctive, or other affirmative relief against any of the Prepetition Secured Parties, or with respect to the Prepetition Secured Parties' respective liens on or security interests in the Prepetition Collateral or the Collateral that would impair the ability of any of the Prepetition Secured Parties to assert or enforce any lien, claim, right, or security interest or to realize or recover on the Prepetition Secured Indebtedness, to the extent applicable; (b) for objecting to or challenging in any way the legality, validity, priority, perfection, or enforceability of the claims, liens, or interests (including, without limitation, the Prepetition Liens) held by or on behalf of each of the Prepetition Secured Parties related to the Prepetition Secured Indebtedness; (c) for asserting, commencing, or prosecuting any claims or causes of action whatsoever, including, without limitation, any Avoidance Actions related to or in connection with the Prepetition Secured Indebtedness or the Prepetition Liens, including any cause of action seeking to

invalidate, set aside, avoid or subordinate, in whole or in part, the Prepetition Secured Indebtedness, the Prepetition Liens or Adequate Protection Liens; (d) for prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the Prepetition Liens or any other rights or interests of any of the Prepetition Secured Parties related to the Prepetition Secured Indebtedness or the Prepetition Liens; or (e) for monetary, injunctive, or other affirmative relief against any of the Prepetition Secured Parties relating in any way to the Prepetition Secured Indebtedness; *provided* that no more than $50,000 of the proceeds of the Collateral, or the Prepetition Collateral, including the Cash Collateral, in the aggregate, may be used solely by any Committee appointed (if any) in this Case, if any, solely to investigate, prior to the Challenge Period Termination Date, any potential Challenge, including claims, causes of action, adversary proceedings, or other litigation against the Prepetition Secured Parties solely concerning the legality, validity, priority, perfection, enforceability or extent of the Prepetition Secured Indebtedness and/or the Prepetition Liens.

20. ***Enforceability; Waiver of Any Applicable Stay.*** This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof. Notwithstanding Bankruptcy Rule 6004(h), 6006(d), 7062 or 9014 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

21. ***No Waiver for Failure to Seek Relief.*** The failure or delay of any of the Prepetition Agents, the Notes Trustee or the Prepetition Secured Parties to seek relief or otherwise exercise any of its rights and remedies under this Order, the Prepetition Documents or

applicable law, as the case may be, shall not constitute a waiver of any rights hereunder, thereunder, or otherwise, by the Prepetition Agents, the Notes Trustee or the Prepetition Secured Parties, as applicable.

22.     ***Proofs of Claim.***  Notwithstanding anything to the contrary contained in any prior or subsequent order of the Court, including, without limitation, any order establishing a deadline for the filing of proofs of claim or requests for payment of administrative expenses under section 503(b) of the Bankruptcy Code, the Prepetition Secured Parties shall not be required to file any proof of claim or request for payment of administrative expenses with respect to any of the Prepetition Secured Indebtedness, the Prepetition Liens, the Adequate Protection Liens, or the Adequate Protection Claims; and the failure to file any such proof of claim or request for payment of administrative expenses shall not affect the validity, priority, or enforceability of any of the Prepetition Documents, Prepetition Secured Indebtedness, the Prepetition Liens, the Adequate Protection Liens, or the Adequate Protection Claims or prejudice or otherwise adversely affect the Prepetition Secured Parties' rights, remedies, powers, or privileges under any of the Prepetition Documents, this Interim Order, or applicable law.  The Stipulations shall be deemed to constitute a timely filed proof of claim on behalf of each of the Prepetition Secured Parties with respect to the Prepetition Secured Indebtedness and all related obligations in this Case or any Successor Case (as defined herein).  Notwithstanding the foregoing, each of the Prepetition Agents and the Notes Trustee, on behalf of itself and its respective Prepetition Secured Parties, is authorized and entitled, but not required, to file (and amend and/or supplement, as each sees fit) a proof of claim and/or master proof of claim for any claim described herein or otherwise related to any Prepetition Secured Indebtedness.  The provisions set forth in this paragraph are intended solely for the purpose of administrative convenience and

shall not affect the substantive rights of any party-in-interest or their respective successors-in-interest.

23.     ***Intercreditor Agreement.***   Pursuant to section 510 of the Bankruptcy Code, notwithstanding anything herein to the contrary, the Intercreditor Agreement and any other applicable intercreditor or subordination provisions contained in any of the Prepetition Documents or any of the Secured Debt Documents (as defined in the Intercreditor Agreement) shall (a) remain in full force and effect, (b) continue to govern the relative obligations, rights and remedies as between and among the Prepetition Original Loan Secured Parties, the Prepetition New RCF Secured Parties, and the Prepetition Notes Secured Parties and (c) not be deemed to be amended, altered or modified by the terms of this Interim Order unless expressly set forth herein or therein.

24.     ***Section 552(b) of the Bankruptcy Code***.   Subject to entry of the Final Order, the (i) Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and (ii) the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to any of the Prepetition Secured Parties with respect to proceeds, products, offspring or profits of any of the Prepetition Collateral or the Collateral.

25.     ***No Marshaling.***   Subject to entry of the Final Order granting such relief, the Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral or the Collateral.

26.     ***Expense Invoices; Disputes; Indemnification.***

(a)     The Debtor's obligation to pay the professional fees and expenses of the Prepetition Agents, the Notes Trustee or the Ad Hoc Group as provided in paragraph 4(c) of this Interim Order shall not require further Court approval, except as otherwise provided for below.

(b)     The professional fees and expenses covered by paragraph 4 of this Interim Order shall be payable without the necessity of filing formal fee applications or complying with the U.S. Trustee Guidelines; *provided* that copies of invoices for such professional fees, expenses, and disbursements (the "Invoiced Fees") shall be served by email on counsel to the Debtor, the U.S. Trustee, and counsel to any Committee (if appointed), who shall have ten (10) calendar days (the "Review Period") to review and assert any objections thereto.  Invoiced Fees shall be in the form of an invoice summary for professional fees and categorized expenses incurred during the pendency of the Case, and such invoice summary shall not be required to contain time entries, but shall include a general, brief description of the nature of the matters for which services were performed and the number of hours performed by each professional and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any work product doctrine, privilege or protection, common interest doctrine privilege or protection, any other evidentiary privilege or protection recognized under applicable law, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege, work product doctrine, privilege or protection, common interest doctrine privilege or protection, or any other evidentiary privilege or protection recognized under applicable law.  The Debtor, any Committee, or the U.S. Trustee may dispute the payment of any portion of the Invoiced Fees (the "**Disputed Invoiced Fees**") if, within the Review Period, a Debtor, any Committee or the U.S. Trustee notifies the submitting party in writing setting forth the specific objections to the Disputed Invoiced Fees.  If the parties are unable to reach resolution with respect to the Disputed Invoiced Fees, then the Court may resolve any such issues upon at least ten (10) business days' prior notice and a hearing. For

avoidance of doubt, following the Review Period, the Debtor shall promptly pay in full all Invoiced Fees other than the Disputed Invoiced Fees.

(c)      Subject to any restrictions imposed by applicable law, nothing in this Interim Order shall abrogate the indemnification provisions set forth in any of the Prepetition Documents.  In addition, the Debtor will indemnify each of the Prepetition Secured Parties and their respective affiliates, successors, and assigns and the officers, directors, employees, agents, attorneys, advisors, controlling persons, and members of each of the foregoing (each an "Indemnified Person") and hold them harmless from and against all costs, expenses (including but not limited to reasonable and documented legal fees and expenses), and liabilities arising out of or relating to the transactions, procedures, and/or relief contemplated by this Interim Order. No Indemnified Person shall have any liability (whether direct or indirect, in contract, tort, or otherwise) to the Debtor or any shareholders or creditors of the Debtor for or in connection with the transactions, procedures, and/or relief contemplated by this Interim Order, except to the extent such liability is found in a final non-appealable judgment by a court of competent jurisdiction to have resulted solely from such Indemnified Person's fraud, bad faith or willful misconduct, and in no event shall any Indemnified Person be liable on any theory of liability for any special, indirect, consequential, or punitive damages.

27.      ***Credit Bidding and Sale Provisions.***   Subject to paragraph 18 hereof, the Intercreditor Agreement and the provisions of section 363(k) of the Bankruptcy Code, the Prepetition Agents and the Notes Trustee shall have the right to credit bid (either directly or through one or more acquisition vehicles) up to the full amount of the applicable Prepetition Secured Parties' respective Prepetition Secured Indebtedness, including the respective Adequate Protection Superpriority Claims, if any, in any sale of all or any portion of the Prepetition

Collateral or the Collateral, including, without limitation, sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any chapter 11 plan.  The Debtor shall not object to, or solicit, support, or encourage any objection to, any rights set forth in this paragraph 27.

28.     *Headings*.  The headings in this Interim Order are for purposes of reference only and shall not limit or otherwise affect the meaning of this Interim Order.

29.     *Retention of Jurisdiction*.  The Court has and will retain jurisdiction to enforce this Interim Order and with respect to all matters arising from or related to the implementation of this Interim Order.

30.     *Final Hearing*.  A Final Hearing to consider the relief requested in the Motion on a final basis shall be held on May 4, 2023 at 3:00 p.m. (prevailing Central time).  Within three (3) business days after entry of this Interim Order, the Debtors shall serve, or cause to be served, notice of the Final Hearing, along with a copy of the Motion (to the extent the Motion was not previously served on a party) and this Interim Order, by first class mail, electronic transmission or other appropriate method of service on (a) the Notice Parties, (b) counsel to any Committee and (c) any party that has requested notice pursuant to Bankruptcy Rule 2002.  Any responses or objections to approval of the Motion on a final basis shall be made in writing, conform to the applicable Bankruptcy Rules, be filed with this Court and served so as to be actually received no later than April 28, 2023, at 5:00 p.m. (prevailing Central time) by the following parties: (a) proposed counsel to the Debtor, (i) Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, NY 10019 and (ii) Porter Hedges LLP, 1000 Main Street, Houston, TX 77002; (b) the Office of the United States Trustee for the Southern District of Texas; (c) counsel to JPMorgan Chase Bank, N.A., as the Original Loan Administrative Agent, (d) counsel to Wilmington Savings Fund Society, FSB, as the New RCF Administrative Agent,

(e) counsel to the Notes Trustee, (f) counsel to the Ad Hoc Group and (f) proposed counsel to any statutory committee appointed in the Case.  If no objections are filed to the Motion, this Court may enter a Final Order without further notice or hearing.

**Signed:  April 13, 2023.**

DAVID R. JONES
UNITED STATES BANKRUPTCY JUDGE

## __Exhibit 1__

**Initial Approved Budget**

**National Cinemedia, LLC**
**Cash Collateral Budget**
**Prepared as of 04.11.23**

| Postpetition Week: | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| $000s | 14-Apr | 21-Apr | 28-Apr | 5-May | 12-May | 19-May | 26-May | 2-Jun | 9-Jun | 16-Jun | 23-Jun | 30-Jun | 7-Jul | Budget |
| **Cash Receipts** | | | | | | | | | | | | | | |
| Customer Collections | $ 466 | $ 1,560 | $ 1,560 | $ 1,560 | $ 1,560 | $ 1,560 | $ 1,560 | $ 3,120 | $ 3,120 | $ 3,120 | $ 3,120 | $ 3,120 | $ 3,820 | $ 29,246 |
| **Total Receipts, net** | **466** | **1,560** | **1,560** | **1,560** | **1,560** | **1,560** | **1,560** | **3,120** | **3,120** | **3,120** | **3,120** | **3,120** | **3,820** | **29,246** |
| **Operating Disbursements** | | | | | | | | | | | | | | |
| Wages & Benefits | (175) | (65) | (1,883) | (53) | (1,656) | (53) | (2,059) | (604) | (1,656) | (53) | (1,648) | (288) | (1,648) | (11,840) |
| Management Fees & Admin. | - | - | (746) | - | - | - | (899) | - | - | - | - | (746) | (199) | (2,590) |
| TAF & Affiliate Payments | - | - | (904) | - | - | - | (1,339) | (933) | - | - | - | (3,572) | (1,413) | (8,160) |
| Technology & Other Network Costs | (124) | (993) | (193) | (332) | (23) | (772) | (273) | (941) | (31) | (541) | (68) | (236) | (477) | (5,003) |
| Other SG&A | (150) | (311) | (250) | (772) | (290) | (250) | (250) | (471) | (240) | (150) | (100) | (490) | (296) | (4,020) |
| **Total Operating Disbursements** | **(449)** | **(1,369)** | **(3,975)** | **(1,156)** | **(1,969)** | **(1,075)** | **(4,819)** | **(2,949)** | **(1,927)** | **(744)** | **(1,816)** | **(5,331)** | **(4,033)** | **(31,613)** |
| **Cash Flow From Operations** | **$ 17** | **$ 191** | **$ (2,415)** | **$ 404** | **$ (409)** | **$ 485** | **$ (3,259)** | **$ 171** | **$ 1,193** | **$ 2,376** | **$ 1,304** | **$ (2,211)** | **$ (213)** | **$ (2,367)** |
| **Financing & Restructuring** | | | | | | | | | | | | | | |
| Company Advisors | - | (150) | - | - | (150) | - | - | - | (2,624) | - | - | - | (2,596) | (5,520) |
| Lender Advisors | - | (1,551) | (640) | (536) | (675) | (425) | (375) | (386) | (525) | (375) | (375) | (275) | (286) | (6,422) |
| Escrow Account Funding | - | - | - | (626) | - | - | - | (649) | - | - | - | - | (409) | (1,684) |
| Other Restructuring Related | - | - | - | - | - | - | - | - | - | - | - | - | (250) | (250) |
| **Total Restructuring** | **-** | **(1,701)** | **(640)** | **(1,162)** | **(825)** | **(425)** | **(375)** | **(1,035)** | **(3,149)** | **(375)** | **(375)** | **(275)** | **(3,540)** | **(13,876)** |
| **Total Net Cash Flow** | **$ 17** | **$ (1,509)** | **$ (3,055)** | **$ (758)** | **$ (1,234)** | **$ 60** | **$ (3,634)** | **$ (864)** | **$ (1,956)** | **$ 2,001** | **$ 929** | **$ (2,486)** | **$ (3,753)** | **$ (16,243)** |
| Beginning Cash | 47,315 | 47,332 | 45,823 | 42,768 | 42,010 | 40,776 | 40,836 | 37,202 | 36,338 | 34,382 | 36,383 | 37,312 | 34,825 | 47,315 |
| **Ending Cash** | **$ 47,332** | **$ 45,823** | **$ 42,768** | **$ 42,010** | **$ 40,776** | **$ 40,836** | **$ 37,202** | **$ 36,338** | **$ 34,382** | **$ 36,383** | **$ 37,312** | **$ 34,825** | **$ 31,072** | **$ 31,072** |

Note: Week 1 includes the post-petition period from April 12-14.

## Exhibit 2

### Milestones

(a)     By 11:59 p.m. (prevailing Eastern Time) on April 11, 2023, the Petition Date shall have occurred;

(b)     No later than one (1) calendar day after the Petition Date, the Debtor shall file the First Day Pleadings (as defined in the RSA);

(c)     No later than 5 calendar days after the Petition Date, this Court shall have entered this Interim Order;

(d)     No later than 15 calendar days after the Petition Date, the Debtor shall file the Plan, the Disclosure Statement, the Disclosure Statement Motion, and Solicitation Materials (as each such term is defined in the RSA);

(e)     No later than 45 calendar days after the Petition Date, this Court shall have entered the Final Order;

(f)     No later than 60 calendar days after the Petition Date, this Court shall have entered an order approving the Disclosure Statement and Solicitation Materials;

(g)     To the extent the Debtor enters into the New Regal Affiliate Advertising Agreement (as defined in the RSA) (with the consent of the Ad Hoc Group), no later than 105 calendar days after the Petition Date, the Bankruptcy Court shall have entered the Regal Approval Order (as defined in the RSA);

(h)     No later than 105 calendar days after the Petition Date, this Court shall have entered the Confirmation Order (as defined in the RSA) (the "Confirmation Date");

(i)     No later than 60 calendar days after the Confirmation Date (the "Outside Date"), the Plan Effective Date (as defined in the RSA) shall have occurred;

*provided*, *that*, if this Milestone shall not have been satisfied solely because the Shareholder Vote (as defined in the Plan Term Sheet attached to the RSA) has not yet been approved by a majority of the NCMI shareholders at a duly held meeting of the NCMI shareholders, this Milestone shall be automatically extended a further 30 calendar days.