UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |
|---|---|
| In re: | § Chapter 11 |
| NATIONAL CINEMEDIA, LLC, | § Case No. 23-90291 (MI) |
| Reorganized Debtor.[1] | § |

**REORGANIZED DEBTOR'S REPLY TO KINETOPLAY CLAIMANTS' REQUEST TO STAY REORGANIZED DEBTOR'S OBJECTION TO PROOFS OF CLAIM NOS. 67, 68, AND 69, AND REQUEST FOR STATUS CONFERENCE**

[Relates to Docket Nos. 615 and 640]

National CineMedia, LLC ("NCM LLC" or the "Reorganized Debtor", as applicable), as the Reorganized Debtor, files this *Reorganized Debtor's Reply to Kinetoplay Claimants' Request to Stay Reorganized Debtor's Objection to Proofs of Claim Nos. 67, 68 and 69, and Request for Status Conference* (the "Reply"). The Reorganized Debtor respectfully requests that the Court deny the Kinetoplay Claimants' (defined below) request to stay the *Reorganized Debtor's Objection to Claim Nos. 67, 68, & 69 Filed by MB Kinetoplay, LLC, Eric LaVanchy, and Laurence Tobin* [Docket No. 615] (the "Claims Objections") and set a status conference so that a hearing can be scheduled on the Claims Objections. The Reorganized Debtor reserves all rights to file a further reply addressing all of the other allegations and arguments made in the *Response of MB Kinetoplay, LLC, Eric LaVanchy, and Laurence Tobin to Reorganized Debtor's Objection to Claim Nos. 67, 68, & 69* [Docket No. 640] (the "Claimants' Response").

---

[1] The Reorganized Debtor's address is 6300 South Syracuse Way, Suite 300, Centennial, Colorado 80111. The last four digits of the Reorganized Debtor's taxpayer identification number are 2505.

1

15254879

**INTRODUCTION**

1. MB Kinetoplay, LLC, Eric LaVanchy and Laurence Tobin (the "<u>Kinetoplay Claimants</u>") are attempting to make an end run around this Court's jurisdiction by asking this Court to delay ruling on the Claims Objections. More than a year and a half after first filing suit against NCM LLC in state court in Colorado and nine months after filing proofs of claim in this bankruptcy case seeking a combined amount of more than $64 million, the Kinetoplay Claimants repackaged the same claims and sued NCM LLC's parent and two of its executives in California (the "<u>California Lawsuit</u>").[2] At the heart of the California Lawsuit is the issue squarely in front of this Court—whether NCM LLC fulfilled its obligations to the Kinetoplay Claimants under certain agreements executed by the parties. If this Court finds that NCM LLC fulfilled its contractual obligations, the Kinetoplay Claimants' proofs of claim must be denied, and the claims in the California Lawsuit will likely be dismissed as well. In an effort to forum shop and to tie this Court's hands, the Kinetoplay Claimants now ask this Court to stay these proceedings indefinitely, all while keeping their purported $64 million claims live in this Court and delaying payments to other unsecured creditors. The Kinetoplay Claimants' request is nothing more than an attempt to move this fight to a different forum, despite the key issue at the heart of the California Lawsuit being ripe for a ruling from this Court. The Reorganized Debtor requests that the Court deny the Kinetoplay Claimants' request to delay these proceedings, set a status conference to address scheduling, and set the Claims Objections for hearing no later than June 14, 2024.

---

[2] *See MB Kinetoplay, LLC, Eric LaVanchy, and Laurence Tobin v. National CineMedia, Inc., Thomas Lesinski, Richard Butler, and DOES 1 to 10*, Case No. 24-EC-00467 in the Superior Court of the State of California, County of Los Angeles (the "<u>California Lawsuit</u>").

15254879

**STATEMENT OF FACTS**

**The Chapter 11 Case and Confirmed Plan**

2. On April 11, 2023 (the "Petition Date"), NCM LLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

3. NCM LLC filed its *First Amended Chapter 11 Plan of Reorganization of National CineMedia, LLC* [Docket No. 249] on May 12, 2023, and filed its *Modified First Amended Chapter 11 Plan of Reorganization of National CineMedia, LLC* on June 25, 2023 [Docket No. 428] (the "Plan"). On June 27, 2023, the Court confirmed the Plan by the Court's *Findings of Fact, Conclusions of Law, and Order (I) Approving the Debtor's Disclosure Statement on a Final Basis and (II) Confirming the Modified First Amended Chapter 11 Plan of Reorganization of National CineMedia, LLC* [Docket No. 457] (the "Confirmation Order").

4. The Kinetoplay Claimants did not object to the Plan or entry of the Confirmation Order and did not appeal the Confirmation Order. The Plan went effective on August 7, 2023. *See* Docket No. 554. The Confirmation Order is a final order.

5. Among other provisions, the Plan provides for distributions from a GUC Cash Pool (as defined in the Plan) of $15 million to Holders of Allowed Class 4 General Unsecured Claims (as defined in the Plan). Plan, Art. I, section 1.1(89) (definition of "GUC Cash Pool"); Plan, Art. III, section 3.2(d) (treatment of Class 4 General Unsecured Claims). The Reorganized Debtor is authorized to make distributions from the GUC Cash Pool. Plan, Art. I, section 1.1(67) (defining "Distribution Agent" to mean "the Reorganized Debtor or any other Entity the Reorganized Debtor selects to make or to facilitate distributions in accordance with the Plan"); Plan, Art. VI, section 6.1(a) (outlining powers of the Distribution Agent).

**The Kinetoplay Litigation Matters**

6. The Kinetoplay Claimants formed Kinetoplay Inc. in 2015. Under the various agreements described in detail in the Claims Objections, in 2017, NCM LLC bought Kinetoplay Inc.'s digital gaming business and brought on LaVanchy and Tobin as employees and MB Kinetoplay as a consultant to help manage and promote NCM LLC's digital gaming pillar through various media outlets. As part of the transaction, the Kinetoplay Claimants signed employment and consulting agreements with NCM LLC (the "Agreements"). The Agreements provided for earnout bonuses (the "Performance Bonuses") if specific revenue streams exceeded certain thresholds over certain periods. Each of the Agreements was with NCM LLC—none of the non-Debtor Affiliates (defined below) were contract parties to the relevant Agreements.

7. The Kinetoplay Claimants sued NCM LLC pre-petition in Colorado state court and filed their Amended Complaint (the "Colorado Complaint") on June 10, 2022.[3] The Kinetoplay Claimants sued NCM LLC alone in the Colorado Complaint—neither National CineMedia, Inc. ("NCMI"), Thomas Lesinski, Richard Butler[4] nor any other director or officer of NCM LLC or NCMI were named.

8. The Colorado Complaint sought liability under four theories: (1) Breach of Contract; (2) Breach of Duty of Good Faith; (3) Civil Theft; and (4) Violation of Colorado Wage Claim Act. Only LaVanchy and Tobin asserted the claims under the Colorado Wage Claim Act (the "CWCA Claims"). In March 2023, the Colorado state court entered an order granting in part

---

[3] See *MB Kinetoplay, LLC, Eric LaVanchy, and Laurence Tobin v. National CineMedia, LLC*, Case No. 2022CV31341, in the District Court, City and County of Denver, Colorado (the "Colorado Lawsuit").

[4] The Kinetoplay Claimants erroneously sued and named Richard Butler as a defendant in the California Lawsuit and claim that Richard Butler was NCM LLC's chief digital officer during the relevant period. However, NCM LLC's chief digital officer at that time was Frederick Butler. Based thereon, Frederick Butler has been erroneously sued and named as Richard Butler in the California Lawsuit described herein.

15254879

NCM LLC's motion to dismiss the claims, denying the Kinetoplay Claimants' allegations of breach of duty of good faith and the CWCA Claims (the "Colorado MTD Order").

9. Each of the four theories in the Colorado Complaint was dependent on the existence of a breach of the Agreements. In other words, if the Performance Bonuses were not earned, the Kinetoplay Claimants had no cause of action under any of the four theories.

10. On May 30, 2023, the Kinetoplay Claimants filed their proofs of claim numbers 67, 68, and 69 (the "Proofs of Claim") in this chapter 11 case. The Proofs of Claim are purported general unsecured claims based on unliquidated damages for the remaining two causes of action in the Colorado Lawsuit (breach of contract and civil theft). The Kinetoplay Claimants appended the Colorado Complaint and the Colorado MTD Order as support for the Proofs of Claim. *See* Addendum to Proof of Claim No. 68 ("Tobin alleges that the Debtor breached the Employment Agreement and committed civil theft under Colorado law when it failed to pay the bonus . . . ."); Addendum to Proof of Claim No. 69 (same for LaVanchy); Addendum to Proof of Claim No. 67 (same for MB Kinetoplay except that it is for breach of consulting agreement).

11. The Kinetoplay Claimants seek a combined $21,374,150 in damages under the breach of contract theory and a combined $64,122,450 under the civil-theft theory, which includes a claim for treble damages. The Kinetoplay Claimants also seek prejudgment interest, attorney fees, and costs in an unspecified amount. The Reorganized Debtor filed the Claims Objections on January 3, 2024, requesting that the Bankruptcy Court disallow the Proofs of Claim in their entirety.

12. Because the Proofs of Claim are general unsecured claims, any allowed recovery will be paid from the GUC Cash Pool. The Proofs of Claim are the last significant, disputed Class 4 claims, and the Reorganized Debtor is reserving a *pro rata* portion of a distribution for the

Kinetoplay Claimants based on the full trebled amount of $64,122,450. Until this Court determines the amount owed to the Kinetoplay Claimants on the Proofs of Claim, if any, distributions to Holders of Allowed Class 4 General Unsecured Claims are being delayed.

13. On February 2, 2024—over three years after the end of the first bonus period giving rise to the alleged harms, over one and a half years after commencing the Colorado Lawsuit, and nearly one month after the Reorganized Debtor filed the Claims Objections—the Kinetoplay Claimants sued NCMI, Lesinski, Butler, and DOES 1 to 10[5] (the "non-Debtor Affiliates"), in California. The California Lawsuit is the first time the Kinetoplay Claimants have sued the non-Debtor Affiliates.[6]

14. Lesinski is the Chief Executive Officer of NCMI, and Butler was the Chief Digital Officer of NCM LLC during the relevant periods; however, the Kinetoplay Claimants argue that the non-Debtor Affiliates' "conduct was outside the scope of their duties and responsibilities to NCM [LLC] as its managing member, directors and/or officers." *See, e.g.,* Complaint in the California Lawsuit, ¶ 143 (attached as Exhibit 1 to the Claimants' Response).

15. The California Lawsuit includes eight causes of action (collectively, the "California Claims"): Conversion (all Kinetoplay Claimants against all non-Debtor Affiliates); Civil Theft (all Kinetoplay Claimants against all non-Debtor Affiliates); Intentional Interference with Contract

---

[5] Paragraph 23 of the Complaint in the California Lawsuit says: "The full names and capacities of Defendants DOES 1 to 10 are unknown to Plaintiffs, who therefore sue such Defendants by such fictitious names pursuant to Code of Civil Procedure section 474 and will seek leave to amend this Complaint when they determine their true names and/or capacities. Plaintiffs are informed and believe that DOES 1 to 10 are legally responsible in some manner for the matters alleged herein." The Reorganized Debtor reserves all rights with respect to any claims against the unknown DOES 1 to 10, including the right to bring an action to enforce the Plan's injunction.

[6] MB Kinetoplay, LLC, and Eric LaVanchy appear to have submitted ballots opting out of the third-party releases found in Article VIII, section 8.3 of the Plan. The Reorganized Debtor is investigating whether Laurence Tobin properly opted out of the third-party releases. If Tobin did not properly opt out, he is in violation of the Plan's injunction found in Article VIII, section 8.5 of the Plan. The Reorganized Debtor reserves all rights to bring an action to enforce the Plan's injunction.

15254879

(Berry against all non-Debtor Affiliates); Intentional Interference with Contract (LaVanchy against all non-Debtor Affiliates); Intentional Interference with Contract (Tobin against all non-Debtor Affiliates); Violation of Wage Act (LaVanchy and Tobin against all non-Debtor Affiliates); Conspiracy (all Kinetoplay Claimants against all non-Debtor Affiliates); and Unfair Business Practices (all Kinetoplay Claimants against all non-Debtor Affiliates).

16. The California Claims are based on facts and allegations that are very similar, and in some cases, identical, to those on which the Colorado Complaint was, and subsequent Proofs of Claim, are based. Like the Colorado Complaint, each theory or cause of action alleged in the California Lawsuit is dependent on a finding of breach of contract by NCM LLC. Because the Kinetoplay Claimants received what they were due under the Agreements, they have no grounds on which to base the California Lawsuit. In other words, if the revenue thresholds were not reached, then the Performance Bonuses were not earned, and the Kinetoplay Claimants cannot prevail on any of the claims asserted in the Proofs of Claim or the California Lawsuit. For example, LaVanchy and Tobin claim that the non-Debtor Affiliates violated a California wage law because "[u]nder California law, employer bonuses such as [LaVanchy's and Tobin's] earn-out bonuses are wages" and "[the non-Debtor Affiliates] caused and continue to cause NCM [LLC] to refuse to pay such wages . . . ." *See* Complaint in the California Lawsuit, ¶¶ 147 – 48. Even accepting for the sake of argument that the non-Debtor Affiliates "caused and continue to cause" the Reorganized Debtor to refuse to pay such "wages," if LaVanchy and Tobin did not earn the Performance Bonuses, there are no "wages" to pay. Similarly, absent the Kinetoplay Claimants' earning the Performance Bonuses, the Kinetoplay Claimants had no "property" that the Reorganized Debtor or the non-Debtor Affiliates could have converted or stolen. *See* Complaint in the California Lawsuit, ¶ 111 ("[Kinetoplay Claimants] had ownership or right to possession of

7

15254879

a specific, identifiable sum of money, *i.e.*, the earn-out bonuses.") and ¶ 118 ("[The non-Debtor Affiliates] are liable to [the Kinetoplay Claimants] because they have concealed, withheld, or conspired and aided in concealing or withholding [the Kinetoplay Claimants'] property, knowing the property to be so stolen or obtained."). Further, even if proof of a breach of contract is not necessary under California law for a claim of intentional interference with a contract, the Kinetoplay Claimants cannot prove any damages absent such a breach. *See, e.g., Ixchel Pharma, LLC v. Biogen, Inc.,* 9 Cal. 5th 1130, 1141, 470 P.3d 571, 575 (2020) ("Tortious interference with contractual relations requires (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) ***actual breach or disruption of the contractual relationship***; and (5) ***resulting damage***." (emphasis added) (internal quotation marks omitted)).

17. Shortly after filing the California Lawsuit, on February 23, 2024, the Kinetoplay Claimants filed the Claimants' Response in the chapter 11 case. As part of the Claimants' Response, the Kinetoplay Claimants ask that this Court "stay deciding the proofs of claim or the Objection until the entry of a final order in the California [L]awsuit." *See* Claimants' Response, p. 8. Importantly, the California Lawsuit has only just begun—there has been no discovery conducted nor any responsive pleadings filed.

## JURISDICTION AND VENUE

18. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). NCM confirms its consent to the entry of a final order.

19. Venue is proper pursuant to 28 U.S.C. § 1408.

20. The bases for the relief are sections 105(a), 502(a) and (b), and 1142 of the Bankruptcy Code, Bankruptcy Rules 3001, 3007, 3021 and 9014, Bankruptcy Local Rule 3007-1, and the Complex Case Procedures. Pursuant to the Plan and Confirmation Order, this Court retained jurisdiction over claims objections.

## ARGUMENT

21. The Kinetoplay Claimants request that this Court stay the Claims Objections, related to the Proofs of Claim filed ten months ago, so that the California Lawsuit, filed only seven weeks ago, can proceed. The Kinetoplay Claimants' request should be denied.

22. Federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," and "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817 (1976) (internal quotes omitted). In fact, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule"—and it is an "extraordinary and narrow exception" at that. *Id*. at 813.

23. As the Fifth Circuit noted in *Murphy v. Uncle Ben's, Inc.*, "the Supreme Court has set forth six factors that may be considered and weighed in determining whether exceptional circumstances exist that would permit a district court to decline exercising jurisdiction: (1) assumption by either court of jurisdiction over a res; (2) the relative inconvenience of the forums; (3) the avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) whether and to what extent federal law provides the rules of decision on the merits; and (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction." *Murphy v. Uncle Ben's, Inc.*, 168 F.3d 734, 738 (5th Cir. 1999). Each of these factors favors this Court's continued exercising of jurisdiction. Factors that are

absent or neutral in a given case generally weigh against abstention. *See id.* (finding that absence of the first and second factors each independently weighed against abstention). The factors favor denying the Kinetoplay Claimants' request for a stay.

24. The first factor, the assumption by either court of jurisdiction over a res, is inapplicable in this case. As in *Murphy*, this case does not involve any res or property over which any court has taken control. Importantly, however, "the absence of this first factor weighs against abstention." *Id.*

25. The second factor, the relative inconvenience of the forums, weighs against abstention. California is an inconvenient forum relative to Texas. Although Lesinski and Butler live in California, NCMI is a Colorado corporation and the Reorganized Debtor has filed and confirmed a plan in in this Court. Further, the Kinetoplay Claimants' arguments that California is a more convenient forum are without merit, as the Kinetoplay Claimants' first chosen forum was in Colorado, not California.

26. The third factor, the avoidance of piecemeal litigation, also weighs against abstention. The California Lawsuit is largely duplicative of the Proofs of Claim—the issues are almost identical, and as explained above, both the California Lawsuit and the Proofs of Claim are dependent on a finding of breach of contract by NCM LLC. In asking for this Court's abstention, the Kinetoplay Claimants even acknowledge the situation as such: "if the Kinetoplay Claimants are able to obtain a judgment and collect their damages from the defendants in the California litigation, the proofs of claim will be nullified." Claimants' Response, p. 9. Thus, this factor weighs against abstention. *Murphy*, 168 F.3d at 738. Further, at the heart of the California Claims is the question that this Court will decide—whether NCM LLC breached the Agreements.

27. The fourth factor, the order in which jurisdiction was obtained by the concurrent forums, favors this Court proceeding with the Claims Objections. The order in which jurisdiction was obtained "should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Id*. (internal quotations omitted). Contrary to the Kinetoplay Claimants' assertion otherwise, significant progress *has* been made in this Court. The Proofs of Claim were filed in May 2023. The Reorganized Debtor has researched, drafted, and filed its 24-page Claims Objections, based on the Colorado law under which the Kinetoplay Claimants pled. The Kinetoplay Claimants have responded to the Claims Objections and have served discovery. Meanwhile, in the California Lawsuit, filed only seven weeks ago (and coincidentally right after the Reorganized Debtor filed the Claims Objections), the non-Debtor Affiliates have not yet responded, nor has discovery been commenced. This factor favors continuation of the Claims Objections.

28. The fifth factor, whether and to what extent federal law provides the rules of decision on the merits, weighs in favor of proceeding with the Claims Objections. "[T]he presence of state law issues weighs in favor of surrender only in rare circumstances." *Id*. at 739 (internal quotations omitted). On balance, this is not such a "rare circumstance."

29. The Kinetoplay Claimants filed the Proofs of Claim, initiating these proceedings, and the Reorganized Debtor filed its Claims Objections in response. Section 502(b) of the Bankruptcy Code requires that, with certain exceptions not implicated here, if an objection to a claim is made, "the court, after notice and a hearing, **shall determine** the amount of such claim, . . . and **shall allow** such claim in such amount . . . ." 11 U.S.C. § 502(b) (emphasis added). Further, prior to the enactment of section 502(b), the Supreme Court explained the foundational principles giving bankruptcy courts summary jurisdiction over the matters before them:

11

> Moreover, this Court has long recognized that a chief purpose of the bankruptcy laws is "to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period," and that provision for summary disposition, "without regard to usual modes of trial attended by some necessary delay," is one of the means chosen by Congress to effectuate that purpose[.] It is equally clear that the expressly granted power to "allow," "disallow" and "reconsider" claims, which is of "basic importance in the administration of a bankruptcy estate," is to be exercised in summary proceedings and not by the slower and more expensive processes of a plenary suit. **This power to allow or to disallow claims includes "full power to inquire into the validity of any alleged debt or obligation of the bankrupt upon which a demand or a claim against the estate is based.** This is essential to the performance of the duties imposed upon it." The trustee is enjoined to examine all claims and to present his objections, **and "(w)hen objections are made, (the court) is duty bound to pass on them."**

*Katchen v. Landy*, 382 U.S. 323, 328–329, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) (internal citations omitted) (alterations by parentheses in original) (emphasis added). As such, this Court must rule on the Claims Objections.

30.     The sixth factor, which is the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction, also weighs in favor of proceeding with the Claims Objections. "This final consideration can only be 'a neutral factor or one that weighs against, not for, abstention.'" *Id*. (citations omitted). In *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), the Supreme Court declared: "When a district court decides to dismiss or stay under *Colorado River,* it presumably concludes that the parallel state-court litigation will be an adequate vehicle for the **complete and prompt resolution** of the issues between the parties. **If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal at all.** Thus, the decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses." The California Lawsuit may take years, during which claims distributions in the chapter 11 case will be paused and U.S. Trustee's fees will be continually accrued. And, should the California court rule against

the Kinetoplay Claimants, this Court will then have to determine allowance or disallowance of the Proofs of Claim—only it may be years from now. Through their very request, the Kinetoplay Claimants show that this Court will still have work to do by either dismissing or determining the Proofs of Claim. *See* Claimants' Response, p. 9 ("Further, if the Kinetoplay Claimants are able to obtain a judgment and collect their damages from the defendants in the California litigation, the proofs of claim will be nullified."). By so doing, the Kinetoplay Claimants also acknowledge the truth of the California Lawsuit—that it is, in reality, a repackaging of the Proofs of Claim, a disguise designed to end run this Court's jurisdiction. The Court should not entertain the Kinetoplay Claimants' attempt to do so.

31.    "Because the balancing of these factors 'is heavily weighted in favor of the exercise of jurisdiction,' in the absence of 'only the clearest of justification,'" the Fifth Circuit in *Murphy* found that the "district court abused its discretion in staying the federal court proceeding pending resolution of the state court suit." *Murphy*, 168 F.3d at 739 (citations omitted).

32.    Additionally, the interests of judicial economy demand an expeditious resolution to the Claims Objections. The California Claims and the Proofs of Claim each require a finding that the same contracts were breached by NCM LLC; absent such a finding, there are no damages or liability on which to base the other legal theories. By asking the Court to delay resolution here, the Kinetoplay Claimants seek to drag out the chapter 11 case. Further, the Kinetoplay Claimants' request would needlessly strain the resources of this Court and the court in Los Angeles, both of which will be required to make the same factual determinations—whether the Performance Bonuses were earned and whether the Reorganized Debtor breached the contracts by not paying the Performance Bonuses. And finally, because the same factual determinations underpin both the

Proofs of Claim and the California Claims, the Kinetoplay Claimants risk creating conflicting judgments or findings between a federal court and a state court.

## CONCLUSION

WHEREFORE, the Reorganized Debtor respectfully requests that this Court (i) deny the Kinetoplay Claimants' request for abstention; (ii) schedule a status conference to set a scheduling order for the Claims Objections; and (iii) grant any further relief to which the Reorganized Debtor may be justly entitled.

Dated: March 20, 2024
Houston, Texas

**PORTER HEDGES LLP**

By: */s/ John F. Higgins*
John F. Higgins (TX 09597500)
Heather K. Hatfield (TX 24050730)
Jack Eiband (TX 24135185)
1000 Main Street, 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Fax: (713) 226-6248
jhiggins@porterhedges.com
hhatfield@porterhedges.com
jeiband@porterhedges.com

*Counsel for the Reorganized Debtor*

15254879

**Certificate of Service**

I certify that on March 20, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *John F. Higgins*
John F. Higgins

15254879